IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

IN AUGUST TERM, IN THE THIRTY-NINTH YEAR OF OUR
INDEPENDENCE.

———◆———

JACKSON, *ex dem.* VAN VECHTEN AND OTHERS, *against* SILL
AND OTHERS.

THIS was an action of ejectment, for land in *Water Vliet*, tried at the *Albany* circuit, in *October*, 1813, before Mr. Justice *Thompson*.

The plaintiff gave in evidence the last will and testament of *Cornelius Glen*, dated the 28th of *August*, 1809, by which, amongst other things, he devised as follows: "I also give, &c. to my said beloved wife, for and during her widowhood, the *farm which I now occupy*, together with the whole crops, of every description, which may be thereon standing at the time of my time of my death," &c. and after the remarriage or death of his wife, he devised the same to *S.* and his heirs. It was held that extrinsic or parol evidence to show that the testator intended to devise the whole of his real estate at *W.*, and which included a farm of 90 acres, in the tenure of *B.* under a lease from the testator for seven years, and that he gave such instructions to the attorney who drew the will, was inadmissible, there being no *latent* ambiguity in the will, but a mistake:

G. deviseð as follows: "I give and bequeath to my beloved wife, for and during her widowhood, *the farm which I now occupy*, together with the whole of the crops, of every description, which may be thereon at the

C

death, whether the same be standing or growing on the land, or have been gathered into my barns, &c.; and also all the buildings," &c. . " Also I give, &c. to my said beloved wife, for and during her widowhood, all the land which I have obtained of *Stephen Van Rensselaer,* Esq. adjoining my said farm, together with the island in the *Hudson* river, commonly called the *Flatts Island.*" " I give, &c. all and singular the real estate and the remainder of the personal estate herein above devised to my said beloved wife, during her widowhood, and from and after her remarriage, or in case she does not remarry, from and after her death, to my nephew *John L. Sill,* his heirs and assigns forever." " *Item,* it is my will that my beloved wife shall, at my decease, enter into the possession of, and take and enjoy the rents, issues, and profits of all and singular my real and personal estate herein above demised to her in the manner herein before expressed, and that my said nephew, *John L. Sill,* his heirs and assigns, shall, in like manner, possess and enjoy the said real and personal estate above demised to him, and the *rents,* issues, and profits thereof, from and after the death or remarriage of my said wife:" " I give, &c. all the residue of my real and personal estate, not herein above disposed of, to my friends, *Abraham Van Vechten, Sanders Lansing, and Barent Bleecker,* and the survivors or survivor of them and the heirs of such survivor, in trust," &c. Under this last clause the lessors of the plaintiff claimed the premises in question.

The lessors of the plaintiff also gave in evidence an indenture of a lease, dated the 18th of *March,* 1806, by which the testator demised to *Henry Salisbury,* for the term of *seven years,* from the 1st of *April* ensuing, subject to the yearly rent of 225 dollars, payable half yearly, all that certain farm, &c. in the town of *Water Vliet,* containing about 90 acres of land, bounded north by *Philip S. Schuyler,* east by *John Schuyler,* south by *Peter S. Schuyler,* and west by the lessor, and as is now in fence, and in the possession of the said party of the second part, with the dwelling house, &c. and appurtenances, &c. Excepting and reserving to the party of the first part, his heirs, &c. all the wood, timber, and trees now standing and growing, or which shall during the time stand, grow, or be in or upon the premises, or any part thereof, together with full liberty of ingress, egress, and regress of him, &c. to cut down and carry away any of the wood, &c. And reserving, also, to the said party of the first

part, &c. all streams of water for mills, and so much land as may be necessary for the erection and accommodation of the said mills and mill-dams, &c.; and also reserving to the said party of the first part, &c. all such land as may be overflowed with water by any dam, &c., and also a right to dig or trench any part of the premises for the purposes aforesaid, and to lay out a road through any part of the premises for the purposes aforesaid, &c.

By virtue of this lease, *Henry Salisbury* entered into the possession of the premises demised, and the same were held and enjoyed by him, or persons deriving under him, at the date of the will of *Cornelius Glen,* who died in the month of *March,* 1810. His widow died in the month of *November,* 1812.

A map of the premises in question, of the land purchased of *Stephen Van Rensselaer,* and other land of the testator was produced at the trial.

The defendants offered in evidence a deed from *Stephen Van Rensselaer* to the testator, executed also by the testator, bearing date the 20th of *September,* 1804, of all that certain farm, &c. in the town of *Water Vliet,* &c. " containing 223 acres of land," &c. This deed was offered for the purpose of showing the description of the land mentioned in the will of the testator as obtained from *Stephen Van Rensselaer,* and its situation in relation to the premises in question and the other lands of the testator; and also for the purpose of showing that the testator considered the premises claimed by the plaintiffs as part of his farm; but the evidence was objected to and overruled by the judge.

The defendants also gave in evidence a lease of the premises in question, together with other land, from the testator to *Joseph* and *Henry Salisbury,* dated the 21st of *March,* 1793, for seven years, from the 1st of *May* ensuing, with exceptions and reservations substantially the same as in the lease above mentioned, and containing also covenant that the lessees should procure out of the commons of the manor of *Rensselaer* all such wood and timber as they might want to use on the demised premises for building, fencing, or fuel, and that they should not cut or destroy any of the wood or timber standing or growing on the premises, &c. The defendants' counsel then offered to give in evidence a deed from *Hermanus V. Cuyler* and others to the testator, dated the 4th of January, 1797; but the evidence was objected to by the plaintiff's counsel, and overruled by the judge. It was agreed, that the deed might be referred to in the argument of the case.

NEWYORK,
August. 1814.

JACKSON
v.
SILL.

The defendants then offered to prove that during the conti-nuance of the leases above mentioned, the testator exercised some of the rights reserved by him, and had, in other respects, partially occupied the premises in question; but this evidence was objected to, and overruled by the judge, on the ground that any acts of occupation not authorised by the lease would be a trespass, and the lease itself gave the plaintiff the benefit of all rights reserved, without any parol proof of their having been exercised.

The defendants' counsel then offered in evidence a *memorandum*, in the hand-writing of the testator, stating the particulars of the purchase of the land of *Cuyler*, &c. but this was objected to by the plaintiff's counsel, and overruled by the judge. The defendant then called as a witness, *A. Van Vechten*, one of the lessors of the plaintiff, and one of the trustees named in the will of the testator, (who declared that he was willing to testify, if the facts offered to be proved by him were competent evidence,) for the purpose of proving that he drew the will of the testator, and that the testator, when he instructed him to draw the will, repeatedly and explicitly declared to him that he meant to de-vise all his real estate in *Water Vliet* to *Mrs. Glen* for life, with remainder to *John L. Sill* in fee, and that when he drew the will, he understood the testator to be in full possession of the whole *Water Vliet* farm, except the islands, which he understood were leased, and that the whole of the improved land was included in one farm, and that, under this impression, he drew the will to carry into effect the declared intention of the testator, whose intentions, in this respect, were repeated and unequivocal. This evidence was objected to by the plaintiff's counsel, and over-ruled by the judge. A written declaration from the lessor, to the same effect, offered in evidence, was also objected to and overruled by the judge. The defendants then offered to prove that the testator had no other land in *Water Vliet* but the land mentioned in the will, and the premises in question, but this was objected to, and the evidence rejected by the judge.

The jury found a verdict for the plaintiff.

A motion was made by the defendants to set aside the verdict and for a new trial; 1. Because, by the will of *Cornelius Glen*, the premises in question passed to the widow of the testator for life, with remainder to *John L. Sill* in fee; 2. Because the evi-

dence offered by the defendants at the trial, and overruled by the judge, was admissible, and ought to have been received.

NEW YORK,
August, 1804.

JACKSON
v.
SILL.

J. *Emott*, for the defendants. The lessors of the plaintiff claim under the devise made by the testator of the *residue* of his estate to them as trustees. The defendant, *Sill*, claims under a particular devise in the same will, which the lessors contend must be restricted to the lands in the actual occupancy of the devisor at the time. At the trial, proof extrinsic to the will was offered to show the intent of the testator, which was rejected by the judge, and the principal question is, whether that proof was admissible.

The well known rule is, that a *latent* ambiguity in a deed or written instrument, may be explained by extrinsic or parol evidence.[*]  " *Ambiguitas verborum latens verificatione suppletur; nam quod ex facto oritur ambiguum verificatione facti tollitur.*" The rule is applicable to contracts and conveyances,[†] and is applied both in law and equity to wills.[‡]  As to wills, courts have gone much farther in letting in this species of evidence, than they have done in regard to contracts and conveyances,[(a)] because mistakes in the latter may be corrected by a court of equity.

Is there, then, a *latent* ambiguity in this case?  Where the plaintiff cannot recover without giving parol evidence as to the *person* who is to take, or the *thing* devised, then there is a latent ambiguity. The plaintiff, in this case, commenced by offering evidence *dehors* the will, which shows there was a latent ambiguity, and if the plaintiff has a right to resort to this kind of evidence, the defendants also may introduce it. The defendants had no intention to contradict the will. The words " I now occupy," are not words of *restriction*, but of *description*. The testator does not say the *land*, but " the *farm* which I now occupy." He does not say *as* I now occupy. He meant merely to describe and locate the farm devised, that is, the *farm* at *Water Vliet*, including such part of it as had been leased under him, or the entire farm. Suppose a person devises a house by the words, " the house which I now occupy," though, in fact, he occupies only one room in the house, would not the whole house pass? " A farm," says *Plowden*,[§] " is a collective word consisting of divers things collected together, as a messuage, lands, mea-

[* *Bac. Maxims*, 99. 106.]

[† *Plowd.* 191. 195.]

[‡ *Thomas* v. *Thomas*, 6 *Term Rep.* 671 676. 7 *Term Rep.* 138. 148. 2 *P. Wms* 35. 141 1 *Bro.* *C. C.* 472. 1 *Vesey*, 232. 2 *Vesey*, 217. 1 *Ves. jun* 259. 266. 357. 3 *Ves. jun.* 148 362.]

[§ *Plowd. Com.* 191. 195. 8 *Vin. Abr.* 248 S. 3.]

(a) See *Jackson* v. *Stanley*, (10 *Johns. Rep.* 133. 137.)

dows, &c. and other things lying or appertaining thereto." And a further thing is requisite, namely, that it has been "let or demised for years, for life, or at will." "A farm is a capital messuage and the lands lying to it, and signifies the chief house and the lands belonging to it." A devise of all the *farm*, then, carried with it the reversion. The first tract in the deed from *Cuyler* to the testator, is the *farm* intended. The will shows that the testator had other farms in other places. The property in question was leased to *Salisbury* merely for agricultural purposes; the testator had a right to cut wood there, and exercise other acts of ownership. (The counsel here referred to the will, the deeds, and map, &c.)

The parol evidence offered as to the intent of the testator, was full, clear, and unequivocal. It ought to have been received on principle as well as on the authority of adjudged cases.

In *Cro. Eliz.* 113. it is said that in one *Batice's Case*, where one being sick sent for a scrivener, and gave him instructions that he devised his house and the lands belonging to it, and the scrivener drew a devise of the house with the appurtenances, it was adjudged that the land passed. There the instructions given to the scrivener must have been admitted in evidence. In *Thomas* v. *Thomas*,[*] Lord *Kenyon* and Mr. Justice *Lawrence* agreed, that though parol evidence of the declarations of the testator, relative to his intention, made before the will, was not to be received, yet such evidence was admissible to explain a latent ambiguity, not appearing on the face of the will.

[* 6 *TermRep.* 671.]

Again, the evidence offered to show that when the testator took a deed of the farm in *Water Vliet*, there was an existing lease which was not considered as affecting the entirety of the farm, was admissible. The premises leased to *Salisbury*, made a part of the farm devised. The words, "which I now occupy," are merely descriptive. Thus in *Goodtitle* v. *Paul*,[†] the testator devised to his wife "all his farm at *Bovington*, in the tenure of *John Smith*," and the court of K. B. were of opinion, that the words, in the tenure of *John Smith*, were words of description, and not of restriction. In *Rumbold* v. *Rumbold*,[‡] the testator devised all the residue of his estate, as well copyhold as freehold, "the part thereof having been previously surrendered to the use of my will;" the testator never having in fact, surrendered his copyhold; it was held to be a mistaken descrip-

[† 2 *Burr.* 1089. Sir *W. Bl Rep.* 256. *Poph.* 188.]

[‡ 3 *Ves. jun.* 65.]

tion, and that the copyhold was clearly intended to be passed. So, in *Goodright* v. *Pears*,* the testator "surrendered his copyhold cottage, with a croft adjoining, and a common right, &c. all which premises were then in his own possession;" and on the same day devised "all his copyhold, cottage, and premises then in his own possession." In fact, the croft, which was divided from the cottage and garden by a gooseberry hedge, was in the actual occupation of a tenant at the time, yet it was held that the whole passed under the description of " copyhold, cottage, and premises," the words, "then in his own possession," being merely a mistaken description.

NEWYORK,
August, 1814.

JACKSON
v.
STILL.
* 11 East's
Rep. 58.

*Henry*, contra. The rules laid down as to latent ambiguities, are not denied. But they are not applicable in the present case. To create such an ambiguity, there must be a doubt as to the sense, or some uncertainty in the signification of the words. If there is no such doubt or uncertainty, parol evidence is inadmissible. The court cannot admit parol evidence to enlarge or contradict a written instrument, under pretence of explaining a doubt. The matter of fact, what the testator did occupy, was certain, or might be made certain. There is no ambiguity in the will itself. The intention and the language are both clear.

It is said that we were obliged to resort to a lease, or evidence *dehors* the will, which shows a latent ambiguity. But this lease is of a distinct and independent farm from the one in the occupancy of the testator. It was for a rent in money. In the exercise of common sense, or even of that subtle and legal sense, for which the opening counsel is distinguished, it is impossible to discover any ambiguity in the devise. Because the plaintiff must locate the subject matter of the devise, it does not follow that there exists that latent ambiguity spoken of in the books. If it were so, there is a latent ambiguity in almost every devise, for in almost every action of ejectment brought by a devisee, the plaintiff must resort to extraneous evidence to establish his title. Suppose the testator had devised Lot No. 1. in the *Kayaderosseras* patent, could the necessity of introducing parol evidence to show the true location or bounds of that lot, create such a latent ambiguity, as would authorise the introduction of parol evidence by the defendants to explain it? The farm leased was within *Plowden's* definition of a farm, for it was let. But that is not necessary to the

definition of a farm, in this country. To constitute what is under‑ stood to be a farm here, it is not necessary that it should be let. A messuage, &c. on which the owner lives, and ploughs and cultivates the land himself, is universally called and under‑ stood to be a farm. In the case put of a devise of a house, it is admitted that the whole would pass, because a house is one and entire.

Without examining the mass of authorities to show the dis‑ tinction between a *restriction* and a *description*, a single case will be sufficient to illustrate my meaning. In the case of *Goodtitle* v. *Paul*,[*] the testator devised to his wife his *farm at Bovington*, in the tenure of *John Smith*. Lord *Mansfield* ob‑ serves that the thing was well and sufficiently described by the words "my farm at *Bovington*," which had gone at *one* rent, and had been used and passed as *one entire thing*, for which *one en‑ tire quit rent* had been paid. The words, "in the tenure of *John Smith*," was an *additional* description merely, which did not *vitiate* the previous description, but might be rejected as surplusage. In the present case, the testator does not say, my farm at *Water Vliet*; and without the words, "which I now occupy," it would be impossible to know where it was situated. These latter words, therefore, are not mere words of description, but of designation and location, which must be proved. To make this case analogous to that of *Goodtitle* v. *Paul*, the words of the will should have been, *my farm at Water Vliet*.

The subsequent clause in the will, by which the testator gives to his wife all the land obtained of *Stephen Van Rensselaer*, ad‑ joining his said farm, &c. does not aid in explaining the extent or bounds of that farm. The word "adjoining" does not imply contiguity throughout; if it touched the farm in any one part it would be considered as adjoining to it.

The word *possessed*, if it had been used, might have been equivocal, for there is a legal as well as an actual possession; but the term "occupy" implies actual possession, *a pedis pos‑ sessio*, or actual cultivation of the land, not a constructive pos‑ session. This description must stand as it was, true or not, at the time it was made. If the testator did not occupy the land at the time he made the will, though he might afterwards have acquired the actual possession of it, yet it would not pass under the will. The lease to *Salisbury* was not merely for *cropping*, as has been said, but was for large rents reserved in money.

* 2 *Burr.* 1089.

NEW-YORK,
August, 1814.

JACKSON
v.
SILL.

Had *Glen* entered without leave of the tenant, he would have been liable as a trespasser.

The evidence offered was to show a mistake in the will, not to explain an ambiguity. The court ought not to give facility to this species of testimony, so dangerous in its consequences. The testator was perfectly *compos mentis*, and intelligent, and the will was read to him.

Again, the island was excepted because it was leased. For the same reason, we contend, the premises in question were also excepted.

In *Brown* v. *Selwin*,* and the cases there cited, and in the note of the editor, the whole doctrine on this subject is to be found. The Lord Chancellor *Talbot*, in that case, though his private opinion was in favour of the intention of the testator, as to *Selwin*, yet decreed against him on the ground that none of the authorities went so far as to let in parol evidence in such a case; and this decree was affirmed in the house of lords.† The rule established by that case is, that no parol evidence is admissible to supply or contradict the words of a will, or to explain the intention of the testator, where the words used are unambiguous and intelligible.‡

The testator gave the rest and residue of his estate not before particularly devised, to trustees for the use of his heirs at law; and it is attempted to defeat this plain bequest by explanatory evidence.

To show that the intention of the testator was not expressed, one witness only, Mr. *Van Vechten*, was offered. He proves only that he was mistaken as to the fact; and it is sought to alter the will on the ground of such mistake. In *Brown* v. *Selwin*, it appears that Mr. *Viner* had instructions in writing, which showed it to be the clear intention of the testator to give the money to the defendant, but as that was not expressed in the will, the chancellor would not allow the evidence of Mr. *Viner* to alter the will.

Besides, Mr. *Van Vechten*, being a trustee, was an incompetent witness, as his evidence would go to a breach of his trust.§ He is, moreover, a co-trustee, and is called upon to alter and contradict the will, under which the trust estate is created.

The declarations or confessions of a party, as to the title to real property, though admissible to show a tenancy, or to satisfy

* *Cas. temp. Talbot*, 240. note 242.

† 4 *Bro. P. C.* 180.

‡ *Ulrich* v. *Litchfield*, 2 *Atk.* 372.

§ 2 *Fonbl. Equ.* 170.

NEWYORK,
August, 1814.

JACKSON
v.
SILL.

* Jackson v.
Shearman, 6
Johns. Rep.
19—21. Jack-
son v. Vos-
burgh, 7
Johns. Rep.
186.

doubts as to the nature of the possession, are never received as evidence of title; for an estate might thus be made to pass by parol, in contradiction to the statute of frauds.* If the declarations of Mr. *Van Vechten* could not, neither can his testimony have this effect. And as a *co-trustee*, he cannot, even by his own solemn deed, alienate or impair the trust estate.

*Woodworth*, in reply. The words "I now occupy," were not essential to the description of the subject. Had they been omitted, the devise would not have been void for uncertainty. The *farm* intended, is made certain by a subsequent clause in the will, which clearly designates its situation. It was shown that the testator always called it, emphatically, *the* farm, that is, the farm at *Water Vliet*. If there was a mistake in the opinion of the testator that he did *occupy* the farm, in the sense contended for by the other side, still the words "the farm," are sufficiently definite and certain.

† 2 Burr.
1089. S. C. 1
W. Bl. Rep.
255.

Having shown that "*the farm*" was the farm at *Water Vliet*, the case is precisely similar to that of *Goodtitle* v. *Paul.*† *Goodright* v. *Pears* is also in point. The words "my farm," means *all* my farm, and when it is shown what was meant by the farm, it shows, that the whole passed, though a part may have been in the occupancy of a tenant. Suppose the testator had been in the actual occupancy of the house and garden only, and had leased all the rest of the farm to a tenant, would not the words "the farm which I now occupy," include more than the house

‡ Plowden,
191.

and garden? The case of *Wrotesly* v. *Adams*‡ is also in point.

What was the sense in which the testator used the words "the farm?" It is clear from the will that the farm at *Water Vliet*, adjoining land bought of *S. Van Rensselaer*, was intended. *Falsa demonstratio non nocet*, if sufficient certainty appear before.

§ 8 East, 104.
‖ 9 Term Rep.
671—676.

This maxim of Lord *Bacon* is recognised in *Doe* v. *Greathed,*§ and in *Thomas* v. *Thomas;*‖ and Lord *Bacon* illustrates the maxim by putting the case, "if I grant land *episcopi nunc Londinensi qui me erudivit in pueritia*, this is a good grant, though he never instructed me."

** Cooper's
Just. 167.
Inst. Lib. 2.
tit 20. s. 29,
30.
†† 2 Domat,
B. 2 tit. 1. s.
6. art. 10. 19.
Ib. s. 8. art.
11.

So, in the civil law, though the testator mistakes the *nomen*, *cognomen, prenomen,* or *agnomen,* of the legatee, yet if his person be certain, the legacy is good: and a legacy is not rendered null by a false description.** The same doctrine is applied to a devise of land, a farm, or tenement.††

The word "occupancy" has a legal meaning.* It is where land is in the possession or management of a person. The lease to *Salisbury* is of 90 acres, and there is a reservation of all the wood and timber, &c. to the lessor and his heirs and assigns, with full liberty of ingress, egress, and regress, &c. There are also other reservations of all streams of water and mills, and mill seats, and land necessary for the same, and the right of laying out roads, &c. through the premises. The lessor must, therefore, be considered as in the possession or occupation of such parts of the demised premises, as are so reserved. If so, it is enough to support the construction for which we contend.

Again, the reference to the farm devised, as adjoining the lands obtained of *Stephen Van Rensselaer,* makes the farm intended as certain as if it had been described by metes and bounds. And the testator, in the following clause, gives to his wife the rents, issues and profits, not of his said farm merely, but of all and singular his real and personal estate, therein before devised to her. In the residuary clause the testator gives instructions to his trustees, as to the disposition of the rents, &c. which do not apply at all to the lands demised to *Salisbury,* which shows clearly, that he considered them included in the previous devise. To show how far the courts in England have gone in giving effect to the intention of the testator, notwithstanding the words of the will, the counsel cited *Doe* v. *Collins,* (2 *Term Rep.* 498.) *Doe* v. *Aplin,* (4 *Term Rep.* 82.) *Hardacre* v. *Nash,* (5 *Term Rep.* 716.) and *Doe* v. *Burt,* (7 *Term Rep.* 701.)

And to show that the parol evidence offered in this case, was admissible, the following authorities were cited: *Roberts on Wills,* 407 or 470. *Roberts on Frauds,* 14. 27, 26, 28. 32. *Fonncreau* v. *Poynt,* 1 *Bro. C. C.* 472. *Harris* v. *Bishop of Lincoln,* 2 *P. Wms.* 135. 2 *Vern.* 519. 593. 6 *Term Rep.* 671. *Cas. temp. Talb.* 240. *Finch's Rep.* 395. 4 *Day's Rep.* 265.

In *Fonnereau* v. *Poynt,* though the words of the devise were in themselves definite and clear, and there was neither a patent nor a latent ambiguity, yet parol evidence was let in to aid the application of the words to the proper subject of the devise, and to support the inference that the testator meant to give a gross sum in money, and not an annuity. Though the case of *Harris* v. *The Bishop of Lincoln,* may not be perfectly consistent with that of *Brown* v. *Selwin,* yet the latter case is not opposed to the principle laid down in *Fonnereau* v. *Poynt,* the pa-

NEW-YORK,
August, 1814.

JACKSON
v.
SILL.

* *Jacob's Law. Dict.*

rol and extrinsic evidence is admissible to incline the judgment, where there is a doubt arising from the context of the instrument. This case goes the full length of the doctrine for which we contend, and justifies the admission of the evidence offered.

Besides, we insist, that there is a latent ambiguity in this case. "An ambiguity," says *Roberts*, "is latent when the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous or delitescent state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby, than will fairly comport with the ordinary or legal sense of the words made use of." Now, is not the state of extrinsic circumstances in this case, such as to raise a doubt?

Instructions given by the testator as to drawing his will, are admissible in evidence.* And a trustee or plaintiff may, if willing, be admitted a witness by consent of parties. In *Norden* v. *Williamson*, it was decided, that if both parties were willing, the plaintiff might give evidence, as a witness, on oath, though his evidence went to defeat the claim of another plaintiff suing jointly with himself. In *Forbes* v. *Wale*,† the plaintiff was examined as a witness before Lord *Mansfield*. So, in *Douglas's Lessee* v. *Sanderson*,‡ in the supreme court of *Pennsylvania*, the plaintiff was admitted as a witness to prove the death of a subscribing witness to a deed, in order to let in evidence of his handwriting.

* 2 *Fonbl. Equ.* 136.

† 1 *W. Bl. Rep.* 532.

‡ 2 *Dallas's Rep.* 116.

The evidence of Mr. *Van Vechten* is full and satisfactory; and, if admitted, must be conclusive in the case.

THOMPSON, Ch. J. delivered the opinion of the court. The question in this cause arises under the will of *Cornelius Glen*, bearing date the 28th of *August*, 1809. The lessors of the plaintiff claim the premises in question under the residuary devise to them in trust, for the purposes therein mentioned, and the defendant, *John L. Sill*, claims them as devisee in remainder, and as being included in the devise to Mrs. *Glen*, in the following words : "I give, devise, and bequeath, unto my beloved wife, for and during her widowhood, *the farm which I now occupy*, together with the whole crops of every description which may be *thereon*, at the time of my death, whether the same are standing or growing on *the land*, or have been gathered into my

barns," &c. The premises in question were, at the time the will was made, and also at the death of the testator, in the possession of *Henry Salisbury*, under a lease, bearing date the 18th of *March*, 1806, for the term of *seven* years; and are described as a farm, piece or parcel of land, containing about ninety acres of land, as is now in fence, and in the possession of the said party of the second part, together with the dwelling-house, barn, barrack, and other 'appurtenances, &c. Upon the trial testimony was offered tending to show that the testator intended to devise the premises as a part of the farm he occupied himself, and of which he died possessed. And the question now is, whether such testimony was admissible.

I think it unnecessary to notice particularly the evidence offered; for it is obvious that if it was competent, especially that of Mr. *Van Vechten*, it would have shown that the premises were intended, by the testator, to be devised to the defendant *Sill*. The will was drawn, however, by Mr. *Van Vechten*, under a misapprehension of facts, and under a belief that the testator was in the actual possession of the premises. It is, therefore, a clear case of *mistake*, as I apprehend, and under this belief I have industriously searched for some principle that would bear me out in letting in the evidence offered; but I have searched in vain, and am satisfied the testimony cannot be admitted in a court of law, without violating the wise and salutary provisions of the statute of wills, and breaking down what have been considered the great landmarks of the law on this subject.

The ground of argument assumed by the defendants' counsel was, that here was a *latent ambiguity*, which required explanation by extrinsic evidence. I did not understand them as going so far as to contend, that if the language of the will was clear, plain, and unambiguous, extrinsic evidence could be received to contradict it, or show an intention repugnant to the plain meaning of words made use of. Such a doctrine, if recognised in our courts of justice, would indeed be alarming. It becomes necessary, then, in the first place, to inquire whether there be any ambiguity in this clause in the will. If there be none, there is no pretence for admitting the evidence offered. The general description of the thing devised is, *the farm I now occupy*. There are other parts in the clause which go to illustrate and confirm the sense in which this expression was used. The term *occupy*, both in a popular and

legal acceptation, has a known, certain, and definite meaning. It would be nonsense, in common parlance, to say that a man occupied a farm which was in the tenure, possession, and management of another; nor is the law chargeable with so much absurdity. The term, in legal acceptation, implies actual use, possession, and cultivation; and that this is the sense in which the term is here used is obvious; it is the farm I *now* occupy. The word *now*, seems to be used emphatically, so as to leave no possible doubt as to the identity of the thing devised. But if any such doubt could exist, it is removed by the subsequent part of the clause, which gives to his wife the whole crops, of every description, which may, at the testator's death, be *thereon*. This is a relative term, referring to the land devised, and she was to have the crops, whether standing or growing, on *the land*, (devised,) or gathered into the barns. The crops here devised evidently refer to those produced by his own immediate cultivation, and could not, by any possible construction, be extended to crops on a farm in the occupation of his tenant, especially, as by the terms of the lease, he was not entitled to any part of the crops, the rent reserved being payable in money. The devise of the crops, therefore, identifies, beyond the possibility of a doubt, the land devised.

It seemed to be admitted, on the argument, that if the designation of the thing devised had been, the *land* I now occupy, it must have been restricted to the testator's own possession, but it was said that the word *farm* had a more general meaning; and *Plowden* (191—195.) was referred to in support of the distinction. According to this authority the land occupied by the testator, and that by his tenant, were *each* farms, or the one as much as the other. Each had a distinct messuage, and lands attached to it; and there was no evidence that one messuage was more a *chief house*, in the language of *Plowden*, than the other. And, indeed, according to the technical definition of the term *farm*, as here given, it would only extend to the land in the occupation of the tenant; for, says the authority, it must not only be a capital messuage and land attached to it, but it must have been *let or demised to another;* for if it has always been reserved in the hands of the inheritor thereof, it has not the name of a *farm*. But I presume that we are not at liberty to resort to any such subtle distinctions for rules by which to construe the meaning of this devise; for no such distinction could have been in the mind of the testator. We must under-

stand the term *farm,* as used in the common popular sense, according to which the land in the possession of *Salisbury* was a separate and distinct farm from that occupied by the testator, and had been so used and improved for many years.

According to this view of the case, there is no ambiguity in the devise which requires the aid of extrinsic evidence to render it certain; and, of course, I might here conclude that the testimony offered was properly overruled. It may not, however, be amiss to look a little at the light in which latent ambiguities are received, and how far they are explainable by extrinsic evidence; and here, as in many other cases, the difficulty consists more in the due and correct application of principles to the given case than in ascertaining and defining the principles themselves. It is a general and settled distinction, running through all the cases on this subject, that extrinsic evidence cannot be received to contradict, vary, or add to, an instrument in writing, but only to explain and elucidate it, and this only in the case of a latent ambiguity. (2 *Vern.* 216.) " An ambiguity," says *Roberts,* in his *Treatise on Frauds,* (15.) " is properly latent, in the sense of the law, when the equivocality of expression, or obscurity of intention, does not arise from the words themselves, but from the ambiguous or delitescent state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by a mere development of extraneous facts, *without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words made use of."* Let us apply this rule to the case before us. There was no question at the trial whether the testator was, in point of fact, in the actual possession of the premises in question, at the time of making his will, or at the time of his death. The evidence on the part of the plaintiffs left no doubt on that subject. It showed, conclusively, that he was not in possession of any part of the premises. The evidence offered was not for the purpose of showing the actual possession of the testator, but to show that he intended to devise as well the farm leased to *Salisbury,* as the one which he occupied himself, and that both farms had, on some occasions, been considered and treated by him as one farm. The admission of such testimony would have been infringing upon the rule as above laid down. It would have been adding to the written language, by allowing us to say the farm in his own occupation

meant also the farm in the occupation of his tenant. It would be requiring us to understand more by the phrase, *the farm I now occupy*, than the ordinary or legal sense would warrant. It would be extending it to a farm in the possession of another. Nor was it competent to prove that these farms were once united in one. Such testimony would have been altogether immaterial; for, admitting the fact, it would not follow that the testator was bound always to keep them united; and the land having been used and improved for many years as two distinct farms, the phraseology of the devise is adapted to such a state of things, and shows that the testator intended to limit it to what he himself was then in possession of. Had the devise been of *all his farm in Water Vliet*, it would have presented a different question; it might have required some explanation as to what was his farm; but when it is qualified and restricted to the farm then in his possession, it can require or admit of no possible explanation, except showing his actual possession, which was not a point in question.

It is, undoubtedly, a correct rule in the construction of wills, to look at the whole will, for the purpose of ascertaining the intention of the testator, in any particular part, *where such part is ambiguous*. But where the intention is clear and certain, and no repugnancy appears between the different parts of the will, no such aid is necessary or proper. It was urged, on the argument, that the testator, in another clause in his will, devises, to his wife, the lands he obtained from *Stephen Van Rensselaer, adjoining his said farm;* and that the land obtained from S. *Van Rensselaer*, according to the testimony offered on the trial, did *adjoin* the premises in question. It is a sufficient answer to this argument to say that the same testimony showed likewise, that that land did adjoin the farm in the actual occupation of the testator. This, therefore, would not falsify the description in the other devise, or be repugnant thereto, and description is never rejected when it is true in point of fact, and consistent with the thing devised. But transpose this clause, and connect it with the other, it would then read thus: " I give and devise to my wife, &c. the farm I now occupy, adjoining the land I purchased of *Stephen Van Rensselaer*." No part of this description need then be rejected; for by applying the devise to the land in the *actual occupation* of the testator, there would be perfect harmony and consistency between the thing or subject, and every part of the description

The incongruity would be created by applying the devise to the premises in question (which were in the possession of *Salisbury*.) In that case some part of the description must be rejected; for the land, although adjoining that obtained of *Stephen Van Rensselaer*, was not occupied by the testator. Part of the description would, therefore, be false; so that the transposition, instead of throwing any light on the subject, would involve it in still greater obscurity. No aid can, therefore, be derived from any other part of the will, and, indeed, no aid is wanting; for the devise is, of itself, as clear, certain, and definite as words could make it.

I have attentively examined most of the cases cited on the argument, but cannot find any principles recognised in them to bear out the claim on the part of the defendants. I shall proceed, however, to notice those which were deemed most important, and as being very analogous to the present case. But a little attention to them will, I think, show, that the analogy does not hold. In the case of *Goodtitle* v. *Paul*, (2 *Burr*. 1089.) the devise was in these words: " I give and devise to my wife my farm at *Bovington*, in the tenure of *John Smith*, subject to her disposal in as full and absolute a manner as I could dispose of the same, if living." The farm at *Bovington* had been leased by one *Hammon* to *William* and *John Smith*, and in the lease was this exception: " Except, and always reserved out of the said demise, all, and all manner of wood, wood ground, hedge rows, timber, and trees whatever, &c. with liberty of ingress and egress, to cut and carry away the same." The testator afterwards purchased the farm subject to this lease, and kept in his own hands, until his death, the excepted premises, which consisted of hedge rows, and of chalk dells, where wood had grown up after the chalk was taken away, entirely surrounded by the land in the tenure of the tenant, and, also, one entire wood of six acres; and the question was, whether these excepted premises, so held by the testator, passed under the devise. Lord *Mansfield*, in giving his opinion, lays considerable stress upon the obvious intention of the testator throughout his will to give to his wife all his estate; that he puts into his will all possible words that can give every thing to her; and his lordship says, the words, " *in the tenure of John Smith,*" are only *additional* description, which will not vitiate any thing *sufficiently described before*;

that these words cannot be understood as a restriction, but only as a *further* description of a thing sufficiently described before. Lord M. adds, "The hedge rows and chalk dells themselves were actually in the tenure of *John Smith;* and as to the six acres of wood land, the soil, as well as the trees, are excepted out of the lease. But Dr. *Paul* gives to his wife a power to dispose of the farm, in as full and absolute a manner as he himself could dispose of the same if living, and he himself might certainly have disposed of the soil of the six acres." Do the facts in that case at all compare with the one before us? There the premises in dispute were a few hedge rows and some wood ground, part of which was in the tenure of *John Smith*, and the whole of which had always passed with the farm as one entire thing; but in this case the premises in question have every quality of a distinct farm, of ninety acres of land with the usual and necessary buildings thereon for the purposes of farming.

The rule alluded to by Lord *Mansfield*, that *falsa demonstratio non nocet*, or, as it is expressed in Lord *Bacon's Maxims*, (*reg.* 25.) *veritas nominis tollit errorem demonstrationis*, cannot be applied to this case. This rule is applicable only to cases where the object of the devise or the thing devised are sufficiently certain, without the demonstration or description; and it was in this sense that Lord *Mansfield* applied the rule, for he says the words, "*in the tenure of John Smith*," are only *additional description* to what was *sufficiently* described before. In such case the false description ought, undoubtedly, to be rejected, the certainty of the thing devised not being affected by such rejection. But in the devise before us, if the words, "*which I now occupy*," are considered as additional description, and are stricken out, what becomes of the certainty of the thing devised? The devise will then stand thus: "*I devise and bequeath unto my said wife, during her widowhood, the farm*." This would be senseless and unintelligible. Had the devise been of *my farm at Water Vliet*, which I now occupy, there would have been some colour for the application of the rule; for then, by striking out what is called the false description, there would be still some certainty left; but as the devise now stands, the words, "*which I now occupy*," are an essential and indispensable part of the designation of the thing devised, and without them the devise would be void. So, also, in the case of *Wrotesley* v. *Adams*, (*Plowden,* 191.) the words, "in the tenure and occupation of *Roger Wil-*

*&c.,*" were held unnecessary, because the description of the premises in the lease were sufficiently certain without them, the lease being *of all their farm in Brosley,* which, say the court, contains certainty in itself. In the case of *Goodright* v. *Pears,* (11 *East,* 57.) the will, and the surrender of the copyhold premises, which had been made by the testator to the use of his will, being cotemporaneous acts, were considered as one instrument, and the surrender was of " all his copyhold cottage, *with a croft adjoining ;*" which *croft* was the premises in dispute. There, then, was certainty in the thing devised, and the additional description, " *then in his own possession,*" was rejected as false demonstration. The case of *Thomas* v. *Thomas,* (6 *Term Rep.* 671.) recognises the rule, that extrinsic evidence may be received to remove a *latent* ambiguity, but it was held that under this rule, parol evidence of declarations made by the testator, previous to making his will, relative to his intentions, were not admissible. Justice *Lawrence* said he thought a will could not be construed by any declarations of the testator made before the making of the will, but that his intention must be collected from the words of the will, *or from what passed at the time of making it.* To what extent this latter expression was intended to be carried, I am at a loss to conceive. If to admit evidence of what passed, showing an intention contrary to the plain and obvious interpretation of the written language, I cannot give my assent to the rule. Mr. Justice *Lawrence,* upon the trial of that cause, received evidence, subject to the opinion of the court on its admissibility, showing a mistake in the name inserted in the will; but the jury having found that no mistake was made, this point did not come in review before the court. The same judge, however, in his opinion at bar, seemed to think the testimony was properly admitted, and refers to cases which he said warranted the admission. (8 *Vin.* 312. 2 *Ver.* 216.) But those will be found to be cases in chancery, and other cases might be cited (3 *Ves. jun.* 362. 3 *Brown, C. C.* 446.) which seem to recognise such a power in a court of chancery. Those cases, however, are principally confined to the correction of *mistakes* in names, and even in such cases, the power may be questionable. Lord *Hardwicke,* in the case of *Goodinge* v. *Goodinge,* (1 *Ves.* 232.) says, parol evidence cannot be read to prove instructions of the testator, after the will is reduced into writing, or declarations *whom* he meant by the written words of the will. But I

know of no case where it has been solemnly decided that a court of law has the power to correct mistakes in any written instruments, and I conclude that no such power exists.   I admit the rules in their fullest extent; that a *latent* ambiguity may be explained by extrinsic evidence, and that if there is a *certain description* of the person or thing devised, and a *further* description is added, it is immaterial whether the superadded description be true or false.    But I think I have sufficiently shown that neither of these rules, within the sense and meaning of the authorities, can have any application to the present case, because there is no ambiguity in the devise, and because, by rejecting the words, " *I now occupy,*" which have been called a false description, there is no certainty left as to the thing devised.

I feel the force, and subscribe to the soundness of the principle which governed Lord *Talbot* in the case of *Brown* v. *Selwyn.* *(Cas. temp. Talb.* 240.)     Although looking out of the will, my private opinion is, that it was the intention of the testator to give to his nephew, *J. L. Sill,* the premises in question, yet I do not feel myself at liberty to yield to the parol evidence, and make a construction against the plain words of the will.    It is better to preserve consistency in legal principles, although it may not always suit the equity of the individual case, than to make those principles bend to what may be thought the substantial justice of each particular case.

We are, accordingly, of opinion that the testimony offered was properly overruled, and that the motion for a new trial must be denied.

PLATT, J. not having heard the argument of the cause, gave no opinion.

New trial refused.