## ROANE vs. GREEN & WILSON.

When a contract is reduced to writing in plain, definite and unambiguous terms, and accepted by the parties as the sole evidence of the contract, neither party will be permitted to introduce parol evidence to alter, or vary its terms or meaning; nor will any conversations, or declarations, either before, at the time, or after the contract is reduced to writing, be admitted to modify or contradict its plain import. (13 *Ark.*, 449–598; 15 *ib.*, 543.)

And so, in a suit upon a note given for the payment of so many "dollars," a plea setting up that the consideration of the note was property to be paid for in Confederate States money, and that when the note was given it was understood and agreed between the parties that the word "dollars" therein should be understood to mean "Confederate States money," held bad on demurrer.

*Error to Jefferson Circuit Court.*

Hon. W. H. HARRISON, Circuit Judge.

ENGLISH, for the plaintiff.

STILLWELL & WASSELL, for the defendants.

Mr. Chief Justice WALKER delivered the opinion of the Court.

This is an action of debt brought by Green & Wilson, in the Jefferson circuit court, against Julia Roane, upon the following instrument.

"On or before the first day of January next, I owe and promise to pay Green & Wilson nine hundred dollars for value received, at ten per cent. from date till paid.

Oct. 24th, 1862.            JULIA ROANE."

The defendant pleaded *nil debet*, upon which plea issue was taken, and two special pleas, to which demurrers were interposed and sustained. No further defence was offered, and judgment rendered for the plaintiffs.

The legal sufficiency of the special pleas is the sole question presented for our consideration.

The matter of defence attempted to be set up in bar of the action, was, that plaintiffs had sold to defendant beef cattle, which by express agreement were to have been paid for in Confederate States paper currency; that part of the price agreed to be paid for the cattle was paid in such currency; and that the note in suit was given for the balance due on such purchase : that it was understood and agreed between the parties at the time the note was executed, that the word " dollars," therein should be understood to mean Confederate States money, which was only worth about ten cents on the dollar. There was no allegation of fraud, nor that the cattle, the consideration for which the note was given, had not been received.

This brief statement of the defence attempted to be interposed by these pleas, may suffice without a more detailed reference to the allegations. Because, waiving all consideration of several obvious defects in the form of the pleadings, the facts as set forth therein, when taken in their broadest sense, and if pleaded in the most apt form, would be no bar to the plaintiff's action. Suppose that the defendant should prove, as he has averred, that the contract between the parties was for confederate paper currency, the effect of such proof would be to set up and establish another and different contract from that declared upon; but it would certainly be no answer to a declaration upon a note for the payment of " dollars." Or, if the facts set forth in the plea, had been intended not to set up a new contract, but to vary the terms and legal import of the contract declared upon, if such plea be sustained in proof by parol evidence (which we will presently show cannot be done) the plea would have accomplished its purpose in thus qualifying the terms of the contract; but would offer no matter of defence in bar of a recovery upon the contract even in its qualified state. In short, the whole scope and purpose of the plea upon the state of facts presented would be, either to

set up a new and different contract from that in suit, or to change and modify it in terms different from that which the language used in the contract imports.

Under the circumstances of the case, we think it not improbable that the contract as reduced to writing, does not fully express the terms of the contract as agreed upon and intended by the parties contracting. But whether this be the case or not, when the contract is reduced to writing in plain, definite and unambiguous terms, and accepted by the parties contracting as the sole evidence of the contract between them, they become bound by it, and will not thereafter be permitted to introduce parol evidence to alter, or vary it in terms or meaning. There is, perhaps, no rule of law more definitely settled, or in regard to which the courts have been more unanimous in opinion, than the one now presented for our consideration. If parol evidence can be introduced in aid of a proper understanding of this contract, it must be because there is some latent ambiguity in it, which extrinsic facts, if introduced, would make certain and definite ; for when such is not the case, then there is no margin for the introduction of parol evidence. The rule in such case is, that where the language is neither uncertain nor ambiguous, it is to be expounded according to its appropriate import. *Story on Con.*, 14. And all oral conversations, or declarations, either before, at the time, or after the contract is reduced to writing, should be rejected, and the writing, taken as the only and sole evidence of the intention and meaning of the parties. *Hooper vs. Chism*, 13 *Ark. Rep.*, 449; *Jordan et al. vs. Fenno*; *id.*, 598; *Glanton vs. Anthony, et al.*, 15 *Ark. Rep.*, 543; *Jackson vs. Sill*, 11 *John. Rep.*, 201; *Smith's Law of Con.*, 94.

Even though, in reducing the agreement to writing, there was clearly a mistake made, parol evidence is inadmissible to correct it. As in the case of *Jackson vs. Sill*, 11 *John. Rep.*, 201, in which the draftsman of a will, supposing a certain tract devised to be that which the testator occupied, described it as " the farm the testator occupied," without more definite description, which

was in point of fact a mistake, the party was not permitted to give parol evidence to correct such mistake. In regard to which, THOMPSON, C. J., said: "I think it unnecessary to notice particularly the evidence offered; for it is obvious that if it was competent, it would have shown that the premises were intended by the testator to be devised to the defendant Sill. The will was drawn, however, by Mr. Vanvechten under a misapprehension of facts, and under a belief that the testator was in actual possession of the premises. It is, therefore, a clear case of mistake, as I apprehend. And under this belief I have industriously searched for some principle that would bear me out in letting in the evidence offered; but I have searched in vain, and am satisfied the testimony cannot be admitted in a court of law, without violating the wise and salutary provisions of the statute of wills, and breaking down what have been considered the great land-marks of the law upon the subject." In the case of *Bond vs. Haas*, 2 *Dallas Rep.*, 133, the facts were, that in 1777, a contract was made for £250, current money of Pennsylvania, due one year after date. At the date of the contract continental money was rating at three for one. Upon the trial the plaintiff insisted that the whole sum should be paid in specie, and offered parol evidence that such was the understanding of the parties; but the court rejected the evidence upon the ground that it in effect altered the contract.

We have seen that this is not a contract in which any latent ambiguity could exist. The contract has no reference whatever to any extrinsic facts which could be brought to explain it : and the rule in such case is, that the ambiguity must not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which are susceptible of explanation by a mere development of facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words used. And therefore, parol evidence would be inadmissible for any purpose connected with the matter attempted to be introduced.

If fraud or failure of consideration had been the subject of inquiry, or if words or phrases, to which custom or science has fixed a peculiar signification, had been used, a different rule would prevail, which we are not, under the state of case before us, to consider.

We have not overlooked the position assumed in argument by counsel, that the contract was made (as they assume) in a foreign government, in which the word ": dollars," had a fixed and definite signification, different from that given to it in the government of the United States, which should limit and control its meaning and govern in its enforcement. Many of the facts set forth in the defendant's pleas, and referred to by counsel in their argument, are public facts, connected with and growing out of the late civil war, of which this court will take judicial notice, and, after giving to them all due consideration, we are persuaded that no such change of government was either made, or attempted to be made, as in any manner to affect the use or meaning of the word " dollars." Our governments, state and national, have at times thrown such an excess of paper currency into circulation as almost entirely, for the time being, to suppress the circulation of specie; but such excess of paper circulation, so far as we are aware, in no wise affected the meaning of the word " dollars." Both the United States government and the late Confederate States government had, at the time this debt was contracted, put into circulation a very large paper currency, each of fluctuating and uncertain value : and whilst we may well suppose that contracts were daily made with reference to the changing value of such currency, still the language used by the parties contracting, did not fluctuate and change its meaning with it. The word " dollars " without other qualifying language in connection with it, can never be understood to mean Confederate States paper currency. So to hold would be to warp and pervert its meaning. Nor can we permit, by the introduction of parol evidence, the qualifying words " Confederate States currency," to be introduced into the contract, either as a substitute for the word " dollars,"

which if done would leave the contract indefinite as to amount; or if we retain the word "dollars" and add the additional words "confederate money," the contract would be most materially changed, which we have held not to be permissible.

The question under consideration is not a new one. It has been repeatedly decided by this court, and in view of the uniform concurrent decisions in most of the courts in the United States, may be considered as settled. And we have been induced to briefly review the decisions, rather because the rules of evidence, when applied to this case and perhaps many others, may result in hardship and inconvenience, than from any doubts as to the correctness of our former decisions.

The effect which national legislation may have upon paper currency, by declaring it a legal tender, or whether, when so declared, it thereby approximates so nearly in value to specie, as to be, in effect, embraced in the term "dollars," we intend now to express no opinion.

From the conclusion at which we have arrived, it follows that the special pleas of the defendant were insufficient to bar a recovery upon the contract declared upon, and that the demurrers to them were properly sustained.

The note sued upon was competent and sufficient evidence to sustain the issue upon the first plea, upon which judgment was properly rendered.

Let the judgment be affirmed.