ELISHA TUCKER & others, Executors *vs.* THE SEAMAN's AID
SOCIETY & others.

A legacy to an unincorporated association, with a direction that it shall go to the
treasurer thereof for the time being, is given to a person as capable of being iden-
tified as any other individual, and the trust, upon which he is to take it, is indi-
cated with certainty.

A testator gave a legacy to "the Seaman's Aid Society in the city of Boston:"
Another society, denominated "the Seaman's Friend Society," claimed the legacy,
and offered evidence to prove that the testator had no knowledge of the existence
of the society named in his will; that he knew of the existence of said other soci-
ety, was deeply interested in its objects, had contributed to its funds, and had fre-
quently expressed a determination to give it a legacy; that he directed the scrivener,
who wrote his will, to insert the legacy as made to said society; that the scrivener,
not knowing the existence of said society, told the testator that the name of the
society was "the Seaman's Aid Society;" and that the testator thereupon sub-
mitted to have that name inserted. *Held*, that this evidence was inadmissible, and
that "the Seaman's Aid Society" was entitled to the legacy.

THE executors of the last will of Nathaniel Tucker, late of
Milton in the county of Norfolk, set forth in a bill in equity that

said Tucker, by said will executed on the 5th of January 1838, after having therein given various legacies, added the following directions : " If there should be property at my decease, more than sufficient to discharge the abovenamed legacies, I dispose of it as follows, that is to say ; " and then proceeded to give various other pecuniary and eleemosynary legacies; and therein, by different items thereof, bequeathed as follows : " *Item* 39. I give and bequeath to the Seaman's Aid Society, in the city of Boston, the sum of one thousand dollars, the interest only of which is to be expended for the benefit of the society. *Item* 45. If any property remains, after paying all the debts, charges and legacies abovenamed, I give and bequeath it as follows: One fourth part of said residue and remainder to be divided between the Seaman's Aid Society and the American Temperance Society. *Item* 47. My will is, in all cases, in this will, where any sum is given to any society or voluntary association not incorporated, that the same be given and go to the treasurer, for the time being, of such society or voluntary association, for the purpose of such society respectively, and that the receipt of such treasurer for the same shall be a sufficient discharge ; and I do hereby will and devise accordingly : " That the property of said Tucker, in the plaintiffs' hands, was more than sufficient to pay *every legacy* given by his will, and that they were desirous to carry their trust, as executors, in respect to said legacies, into full effect, with due speed : That difficulties had occurred in executing that part of their trust arising out of the aforesaid 39th, 45th and 47th items of said will, by reason of the adverse claims of persons voluntarily associated, in divers bodies, for the purpose of befriending, aiding and relieving seamen : That two societies of persons associated for this purpose in the city of Boston, and one in the city of New York, (neither of them incorporated,) had severally interposed their claims to these legacies : That one of said societies in Boston declare themselves designated by the name of the Seaman's Friend, and the other by the name of the Seaman's Aid ; that the society in New York declare their designation to be the American Seaman's Friend , and that all of them are associated for the same object, and are successfully pursuing that object.

The bill then set forth, that although the said testator had long contemplated the manner of disposing of his property, and had cast several dispositions thereof into the form of a will and codicils thereto, yet that in his last sickness the whole was revised and rewritten ; that the items intended for the benefit of seamen were then first inserted in his will ; he having learned from a periodical publication, (the Sailor's Magazine,) to which he was a subscriber, and which he distributed, that there was a society for that purpose, in the objects of which he took a deep interest, and the encouragement of that society being one reason for having his will rewritten : That this society was the American Seaman's Friend Society in the city of New York ; and that the plaintiffs had reason to believe that the testator had no knowledge of any other association for that purpose, and was not even aware of the locality of this ; but that he knew of its existence and of its beneficial operation upon seamen ; that he was acquainted with the corresponding secretary of that society and one of its other officers or agents, and had repeatedly expressed a determination to give a legacy to said society : That one of the plaintiffs [Edmund J. Baker] wrote said last will, having then no knowledge of any association for the benefit of seamen besides the female society in Boston, called the Seaman's Aid Society ; that the testator directed him to insert the legacies aforesaid as made to the Seaman's *Friend* Society ; that he (the writer) told the testator that the name of the society was the Seaman's *Aid* Society ; that the testator said he had never heard it called by any other name than the Seaman's *Friend* Society ; that search was then made for one of said magazines, but that they had been distributed, and none was found ; that the testator, anxious to complete his will, by reason of increasing infirmity, submitted to the writer, (who had reassured him of the designation,) as best conversant with the object of his bounty ; that the testator's extreme illness required the immediate execution of the will, and prevented further thought or discussion of this subject.

The plaintiffs further stated in the bill, that in view of the foregoing facts and circumstances, they had no doubt of the intention of the testator to bestow the aforesaid legacies on the

American Seaman's Friend Society, in the city of New York ; fully believing that the designation of the Seaman's Aid Society of Boston, as made by said will, was caused by the misapprehension and mistake of the testator, and that the misnomer of an association, which is not a body politic or corporate, should not be the means of interrupting or turning aside the true object of the testator's bounty : But that the said Seaman's Aid Society, and its treasurer, and said Seaman's Friend Society, of Boston, and its treasurer, and also the said American Seaman's Friend Society, of New York, and its treasurer, respectively insist that the testator's bounty was intended for them, and respectively claim of the plaintiffs the payment of said legacies.

The prayer of the plaintiffs therefore was, that said several societies, and their respective treasurers, might make answer, on oath, to the matters aforesaid, and set forth what right and inter est they have, or claim to have, in the testator's estate, and especially to said legacies, and how they support their claims ; and that, as the plaintiffs were unable to execute the trusts of said will, without the direction of a court of equity, the court would pass a decree, by which the plaintiffs might be directed to pay said legacies to the party entitled thereto, and by which all other claimants thereof might be barred of their claims.

The *answer* of the Seaman's Aid Society, made by the president and secretary thereof, (after admitting most of the allegations in the bill,) was thus : "They do not perceive any valid reason why they are not and were not intended to be the legatees referred to by the testator in said will ; but on the other hand, they believe that such was his intention, and that the said legacies were made to them : And that, so far as relates to the allegations, in said bill, relative to the conversation, intentions and doings of said testator, or of the person who drafted his said will, (which said allegations they believe to be wholly irrelevant and improper,) they do not admit, but deny the same, and know nothing thereof other than appears in the will."

The joint and several *answer* of the American Seaman's Friend Society and their treasurer, and the Boston Seaman's Friend Society, by their president and treasurer, was in sub-

stance as follows : That at the time of making said answer, and at the time of the death of said testator, each of said societies was a body corporate ; the former being incorporated by an act of the legislature of the State of New York, and the latter by an act of the legislature of the Commonwealth of Massachusetts; and that said Seaman's Aid Society was not a body corporate, had no legal existence, and was not competent to take said bequests: That the circumstances, conversations and directions, leading to and attending the making and rewriting of said last will, and the knowledge, motives, and intent of said testator therein, were such as are set forth in the plaintiffs' bill; and that the name of the Seaman's Aid Society was inserted in said will through the mistake of the scrivener thereof, who was directed to insert therein the name of the Seaman's Friend Society as the intended object of the said testator's bounty : That the American Seaman's Friend Society in the city of New York, and the Seaman's Friend Society in Boston, have long been associated for the same object ; that the latter society is an affiliated branch of the former, and after supporting its own local operations, is bound to pay over its surplus funds into the treasury of the former, which is the parent society : That the present corresponding secretary of said parent society was, for several years, agent of the Boston branch, and at the same time agent for the Sailor's Magazine, a publication printed by the parent society in New York ; and that he became acquainted with said testator, who contributed to the funds both of said parent and said branch societies : That said parent and branch societies were both known to said testator, under the common appellation of the Seaman's Friend Society, and that he never had any knowledge of the existence of said Seaman's Aid Society.

Wherefore said societies claimed to have said legacies paid to said American Seaman's Friend Society, or its treasurer, by the plaintiffs ; because the mistake as to the name of the intended legatee, made by said testator acting, at the point of death, under the influence of the inconsiderate and unfounded assertions of the scrivener of his will, ought not to divert said testator's benefaction from its intended object.

A general *replication* was filed by the plaintiffs, and evidence was taken and published, which supported the allegations of fact in the bill and in the answers. The parties agreed that the records of the respective societies aforesaid might be used as evidence, on the argument. So much of the evidence as is necessary to the full understanding of the points adjudged, appears in the opinion of the court.

This case was argued in 1842.

*Eddy*, for the plaintiffs. The proof supports the averments in the bill, as to the intent of the testator, and the mistake in designating the recipients of his bounty. It shows that he had no knowledge of the Seaman's Aid Society, and that he had, before making his will, determined to give a legacy to the Seaman's Friend Society. As the proof is clear and uncontradicted, the following authorities are applicable, and have their full weight : In Swinburne on Wills, Part 7, § 5, it is said, " if the testator err in the name, but not in the person, such error doth not hurt." In *Beaumont* v. *Fell*, 2 P. W. 141, a legacy to Catherine Earnley was claimed by Gertrude Yardley, and was recovered by her, on proof that she was intended by the testator. In *Powell* v. *Biddle*, 2 Dall. 70, a legacy was given to *Samuel* P., son of Samuel P. of Philadelphia. William P., son of Samuel P. of Philadelphia, was the son of the testator's daughter, but *Samuel* P., son of said Samuel, was the son of a former wife, and the testator had no connexion or acquaintance with him. It was proved that the testator had sometimes called William, by way of nickname or mistake, Samuel. *William* recovered the legacy. See also *Parsons* v. *Parsons*, 1 Ves. jr. 266. *Campbell* v. *French*, 3 Ves. 321. *Masters* v. *Masters*, 1 P. W. 421. *Thomas* v. *Thomas*, 6 T. R. 671. *Careless* v. *Careless*, 1 Meriv. 384. *Bradwin* v. *Harpur*, Amb. 374. *Brown* v. *Gilman*, 13 Mass. 161. Conversations between parties, when a contract is made, may be referred to, as explanatory of the meaning of the words used in the contract. *Gray* v. *Harper*, 1 Story R. 574. In *Heming* v. *Whittam*, 2 Simons, 501, the vice chancellor says, " where legatees are mentioned in a will by names which they never, in point of fact, had ; yet they will take, upon its being proved

that the testator intended them." The same principle was applied in *Goodtitle* v. *Southern*, 1 M. & S. 299. See also 2 Stark. Ev. (7th Amer. ed.) 770, 776, 777.

Lord Holt says, in *Lepiot* v. *Browne*, 1 Salk. 7, "if father and son are both called A. B., by naming A. B., the father, *primâ facie*, shall be intended; but if a devise were to A. B., and the devisor did not know the father, it would go to the son."

Misnomer of a corporation by a testator will not prevent the corporation from taking a legacy. 10 Co. 57 *b*. *Forster* v. *Walker*, 2 Leon. 165, and Cro. Eliz. 106.

The Seaman's Aid Society is an unincorporated association, and has no claim to be known. What civil or political rights has such a society? What duties or obligations? Can the court judicially take notice of it? The Seaman's Friend Society is a corporation, and can take the legacies in question consistently with the most familiar rules of law; no Seaman's Aid Society being found, and the testator's intent being manifest. That an unincorporated society cannot take, see *Boutell* v. *Cowdin*, and *Barker* v. *Wood*, 9 Mass. 254, 419. *Baptist Association* v. *Hart*, 4 Wheat. 1. Com. Dig. Capacity, B. 1.

It will be said that the testator contemplated that the objects of his bounty might not be incorporated, and has given the legacies to their treasurers. This would probably be a full answer, if he had given the legacies to the treasurers by name. *Going* v. *Emery*, 16 Pick. 107. But he has not named any person; and as it is not shown that he knew of the voluntary association, called the Seaman's Aid Society, and as that society had no legal existence, its treasurer, whom the testator would be much less likely to know, cannot be held up as the supposed object of his bounty. The voluntary character of that society strips it of all presumption in its favor.

*Giles*, for the Seaman's Friend Societies. The will gives the legacies in question to "the Seaman's Aid Society, in the city of Boston." This is not the exact name or description of any of the claimants in this case. It appears that the "Seamen's Aid Society" was instituted January 8th 1833, and was *so* called in its first printed report and constitution. In its subsequent re-

ports, it is sometimes called Seaman's, and sometimes Seamen's Aid Society. The "Boston Seamen's Friend Society" was incorporated February 24th 1829 ; *St.* 1828, *c.* 81 ; with power to hold real and personal estate, not exceeding $40,000. In many of its printed reports, it is denominated Seaman's Friend Society. The "American Seaman's Friend Society" was instituted in 1826, and incorporated April 22d 1833, with power to hold real estate to the amount of $50,000, and personal property not exceeding $100,000. In many of its printed reports, it is called Seamen's Friend Society. This case is therefore brought literally within the rule which admits extrinsic evidence to show which of several claimants the testator actually intended, when the name or description in the will does not apply exactly to either of them.

In cases of charitable bequests, a court of chancery will lay hold of all lawful means to ascertain and execute the intent of the testator. 2 Story on Eq. § 1169. *Moggridge* v. *Thackwell,* 7 Ves. 36. *Mills* v. *Farmer,* 1 Meriv. 55. "For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, and to determine the quantity of interest he has given by his will." Wigram on Extrinsic Evidence, 51. See also Greenl. on Ev. §§ 287 – 291, & *notes Sargent* v. *Towne,* 10 Mass. 307. *Brown* v. *Thorndike,* 15 Pick 400. *Williams* v. *Crary,* 4 Wend. 444.

Besides the cases cited by Mr. Eddy, in which extrinsic evidence was admitted to prove a testator s mistake as to names of legatees, &c., the following are strongly applicable. *Selwood* v. *Mildmay,* and *Dobson* v. *Waterman,* 3 Ves. 306, 308, *note. Doe* v. *Huthwaite,* 3 Barn. & Ald. 632. *Door* v. *Geary,* 1 Ves. sen. 255. *Cheney's case,* 5 Co. 68, *b.* In *Doe* v. *Hiscocks,* 5 Mees. & Welsb. 363, there is a concise, comprehensive and clear

exposition of the English law, on the point now before the court, in the opinion given by Lord Abinger. See also *Jackson* v. *Sill*, 11 Johns. 201. *Brown* v. *Saltonstall*, 3 Met. 423.

If, in the present case, the mistaken description of the legatee applied exactly to both of the claimants, or but partially to each of them, it is clear, from the authorities already cited, that extrinsic evidence would be admissible to show which was intended by the testator. But, with the exception of the discrepancies in the use of " Seam*a*n's " and " Seam*e*n's," before alluded to, the mistaken description of the legatee applies exactly to one of the claimants, and but partially to the other.; and no decided case, in favor of the admissibility of extrinsic evidence, since the statute of frauds was passed, has been found, which is exactly parallel, in all its circumstances, with the case at bar. It may therefore be important to decide whether the aforesaid discrepancies do not bring the case within the principles laid down in *Doe* v. *Hiscocks.*

It is submitted that the Seaman's Aid Society, not being incorporated, is incapable of taking the legacies. Perk. § 55. *Bartlet* v. *King*, and *Phillips Academy* v. *King*, 12 Mass. 537, 557. If the mistake of the testator cannot be corrected, so as to give the legacies to the Seaman's Friend Society, they lapse, and go to the residuary legatees. *Hayden* v. *Stoughton*, 5 Pick. 528. The distinction between the present case and that of *Going* v. *Emery*, 16 Pick. 107, is this : In that case, the devise was to certain individuals by name, as trustees. In the case at bar, the bequest is to no persons certain by name, and the Seaman's Aid Society had no legal existence nor successors, and was not known to the testator. In that case, the *St.* of 43 Eliz. *c.* 4, was recognized as law here. But said society, in order to take the legacies, must bring itself within the provisions of that statute, notwithstanding the 47th clause in the will, respecting sums given to unincorporated associations. *Bennett* v. *Hayter*, 2 Beavan, 81. It cannot take the legacies (without great injustice to the residuary legatees and heirs at law) without showing satisfactorily that it was known to the testator. The character of this society, as an association of females, justly raises a doubt whethe  the

testator intended to give the legacies to them, thereby imposing on them a duty and trust so unusual as the perpetual care of the property. Should the society decline the trust, it is certain no court of chancery would ever substitute a *similar* trustee. That society can neither sue nor be sued, nor rightfully even make answer to the present bill, by its associate name; and the individual members, who are femes covert, cannot transact any legal business, without joining their husbands. And if all the members should, at any time, be married, all the property held by the society, including the legacies in question, would instantly vest in their husbands. This doubt, arising from the character of the society, is in the nature of a latent ambiguity, a doubt, arising *ab extra*, which of course must be removed by extrinsic evidence. See *Milner* v. *Milner,* 1 Ves. sen. 106. *Fonnereau* v. *Poyntz,* 1 Bro. C. C. 472, 480. *Powell* v. *Mouchett,* Mad. & Geld. 216. 3 Phil. Ev. (4th Amer. ed.) 1368, *note* 940.

The words in the will in question, so far as they apply to the Seaman's Aid Society, are not the testator's words: and if they cannot be shown to mean Seaman's Friend Society, they ought to be stricken out of the will, so that the legacies may lapse, and g.) to the residuary legatees. Mad. & Geld. *ubi sup.* 8 Vin. Ab. 188. G. a. *Trimlestown* v. *Lloyd,* 1 Bligh N. R. 449, 451, 476. *Hippesley* v. *Homer,* 1 Turn. & Russ. 48, *note.* But extrinsic evidence is admissible to show what the testator understood to be signified by the words he used in the will. *Richardson* v. *Watson,* 4 Barn. & Adolph. 800.

*Brigham,* for the Seaman's Aid Society. The first question is, whether parol testimony shall be admitted with a view of controlling the plain declaration of the will; in other words, whether such evidence shall be introduced, to show that any of the provisions of the will were inserted by mistake. On this question, it is to be remarked that there is no ambiguity in the will itself; the will raises no query as to the meaning of the testator. Whatever question is presented for the consideration of the court arises from evidence *dehors*. And all the authorities, English and American, show that parol testimony cannot be admitted; and the reason is, that to admit it would give

17 *

greater weight to parol evidence than to a written instrument deliberately made, subscribed and attested. *Jackson* v. *Sill*, 11 Johns. 201. *Brown* v. *Saltonstall*, 3 Met. 423. *Doe* v. *Parkin*, 5 Taunt. 321, and 1 Marsh. 61. *Doe* v. *Hiscocks*, 5 Mees. & Welsb. 363. *Baugh* v. *Read*, 1 Ves. jr. 257 *Gallego* v. *Chevallie*, 2 Brock. 285.

The second question is, whether the Seaman's Aid Society, being unincorporated, but having a regular organization, and acting through proper officers, for a charitable purpose, has the capacity to take the legacies in question, under the provisions of the will — one of which is, that in all cases where legacies are given to unincorporated societies, the treasurer for the time being shall be the person to receive the same. This provision of the will renders it unnecessary to show that an unincorporated society, organized for a charitable purpose, can take a bequest. The treasurer, after it is ascertained who the treasurer is, can take; for the description of a legatee, by the name of office, is as good as by christian and surname. But if this were otherwise, then the legacy can be sustained under the *St.* of Eliz. *c.* 4, and the court will carry the will into effect. *Going* v. *Emery*, 16 Pick. 107, settled the law on this subject; so that the trust would be carried into effect, though there was no provision in the will that the treasurer should take. Anc. Chart. 52. *Attorney General* v. *Syderfen*, 1 Vern. 224. *Bartlet* v. *King*, and *Phillips Academy* v. *King*, 12 Mass. 543, 546. *Case of Christ's College*, 1 W. Bl. 90. *Witman* v. *Lex*, 17 S & R. 88. *Inglis* v. *Sailor's Snug Harbor*, 3 Pet. 99.

SHAW, C. J. The plaintiffs in the present case are the executors of the last will and testament of Nathaniel Tucker, late of Milton, deceased, against the Seaman's *Aid* Society, established in Boston, and the treasurer of that society, and the Seaman's *Friend* Society, and the treasurer of that society. The bill is in the nature of a bill of interpleader, in which the plaintiffs set forth certain legacies, to "the Seaman's Aid Society in the city of Boston." They then set forth the fact of the existence of two societies in the city of Boston; one denominated the Seaman's Aid Society, and one called the

Seaman's Friend Society, both having similar objects in view — that of relieving the wants and improving the condition of seamen — both of whom claim the same legacies; and the bill calls on said parties to set forth their respective claims, and the grounds thereof, to the end that the executors may safely carry the said will into effect, according to the true construction and effect thereof.

It appears, by the proofs and pleadings in the case, that there are three charitable societies established for the aid, improvement and encouragement of seamen; one established in the city of New York, called the American Seaman's Friend Society, extending its care to seamen in various places and States; one called the Boston Seaman's Friend Society, established in Boston, and said to be affiliated or connected with the American Seaman's Friend Society, in the relation of parent and branch societies, having in view similar objects and purposes of charity. The other is established in Boston, and is comp'·sed of females, principally or exclusively. The bequest in this will is in terms to the Seaman's Aid Society; but the other two societies claim that the legacies may be paid to them, on the ground that they or one of them were intended by the testator to be the object of his bounty, and the almoners of his charity to seamen, and that the other was not so intended by the testator. The ground set forth in the answer of the former, in respect of their claims, is, that from the circumstances, conversations and directions leading to and attending the making of the will, they fully believe, that from the testator's previous acts and declarations, his acquaintance with the agents and promoters of the Seaman's Friend Society in New York, his taking periodical publications issued by them, and a great variety of collateral circumstances, it was his intention to make these bequests to the Seaman's Friend Society in New York, and not to the Seaman's Aid Society, and that the name of this latter society was inserted by mistake, in consequence of wrong information given to him by the scrivener who wrote his will. The question is, which of these societies is entitled to the legacies.

One ground of argument in favor of the Seaman's Friend Society, and in support of their claim to a preference over the Seaman's Aid Society, is, that the latter is a voluntary society, not incorporated, whereas it appears that both the other societies are legally incorporated. A considerable part of the able argument of the learned counsel for these societies is taken up in an attempt to show that the voluntary society is not competent to take and hold property, and therefore it could not have been the intent of the testator to make a bequest to such an association. If there were nothing in the will to control or modify the direct gift to the unincorporated society, there would be some weight in the consideration. But it appears, by the will itself, that the testator made many bequests, for the promotion of religious and philanthropic objects, to societies and associations well known by the designations under which they acted ; and it probably occurred to him, that some of the associations might not be incorporated, and so could not take and hold property, in the aggregate name or names of association ; and he took the precaution to insert a clause to this effect : " My will is, in all cases in this will, where any sum is given to any society or voluntary association not incorporated, that the same shall go to the treasurer, for the time being, of such society or voluntary association, for the purposes of such society respectively ; and that the receipt of such treasurer for the same shall be a sufficient discharge." Taking this in connexion with the clause making the bequest, it is a gift to a person designated as the treasurer of a voluntary society, and as capable of being identified as any other individual person ; and the trust upon which he is to take is indicated with equal certainty. This reduces the question to a mere question of fact, whether there be a society so named or described as to be capable of being identified, and if so, whether such society has a treasurer. These points are proved by the evidence, as fully and clearly as if the Seaman's Aid Society were incorporated by a legislative act. There is, in point of fact, a society well known as the Seaman's Aid Society, composed of many hundred members, all or mostly females, taking regular and active measures for the

relief and improvement of seamen, and their families, having annual meetings, making annual reports, with calls on the public for assistance, and organized by the annual election of a president, treasurer, and other suitable officers. There was then a person precisely described, and as effectually identified as if named, capable of taking the bequest, upon a trust for charitable purposes, clearly designated. It becomes therefore entirely unnecessary to consider whether, if it had stood as a bequest to the society alone, and it turned out that the society was not incorporated, the society could have taken the bequest. We have taken no notice of the circumstance that this society, in some of their reports, have spelt the name Seam*e*n's Aid, and in some of them Seam*a*n's Aid. The last syllable being unaccented, the sound is the same, and the spelling is immaterial; the name is the same.

But if it were necessary to go more minutely into this com parison of claims, we think it appears somewhat uncertain whether the Seaman's Friend Societies are incorporated. We cannot speak of the American society in New York, because we have not been furnished with the act of incorporation. But we have been referred to the *St.* of 1828, *c.* 81, by which a body is incorporated under the name of " the Managers of the Boston Seamen's Friend Society," with power to hold real and personal estate. It consists of twelve persons named, together with the president, vice president, secretary and treasurer of the said society. It is moreover provided in § 2, that said managers shall never exceed sixteen in number, of whom the president, vice president, secretary and treasurer of the Boston Seamen's Friend Society shall be members ex officio, and that they shall fill their own vacancies. This is not an incorporation of the whole body of contributors to the society; but it presupposes the previous existence of a voluntary society of the name mentioned, and it looks to the continued existence and operation of the same voluntary society, by the action of which a part of the members of this corporation are to be furnished. If therefore the question were in any degree to depend upon the point, that one of the societies is not legally incorporated, and therefore,

as a society, could not take the bequest, it would be proper to consider more closely whether the same objection would not lie to the claim of the other.   The bequest is not made to the managers, &c., by their corporate name, and is not therefore made to the corporation as such, but to the voluntary association.   The treasurer in each case is chosen by a voluntary and unincorporated society, and his election can be proved, in the one case, in the same manner as in the other, by the meetings, acts and measures of the voluntary association.   If then resort is had to the clause in the will, vesting the gift in the treasurer, when the society indicated by the name is unincorporated, the one stands on the footing of equality with the other.   On both grounds, therefore, we think this consideration, that one society was incorporated and the other not, is to be laid out of the case.

We are then brought to the more important and difficult question, which of these societies, under the circumstances admitted or proved, is entitled to take these legacies; for although in form the gift is to the treasurer of the Seaman's Aid Society, yet it is to be given to him in trust for the society, and to be applied and expended under their direction; and therefore it may be considered, for all substantial purposes, in the same manner as if it were a gift to them, which they could legally take.

We consider the fact proved beyond doubt, by the evidence, that the testator intended to make a charitable bequest of property, for the relief and improvement of seamen ; that he had been induced to take an interest in that subject by his previous acquaintance with persons who were connected with the American Seaman's Friend Society; that the principal society was established in New York ; that this interest and sympathy for the wants of seamen were extended and fostered by taking a periodical publication, published by the American Seaman's Friend Society at New York, and devoted to the purposes of setting forth the wants of seamen, and their claims upon the sympathy and aid of the philanthropic, to advance both their spiritual and temporal interests ; that the Boston Seaman's Friend Society, though apparently not known to the testator,

existed in connexion with the parent society at New York, was under the contro' and management of persons having a common object, and that the bequest to one would, in general terms, tend to the accomplishment of the same purposes as if made to the other.  It does not appear, however, that the testator had any knowledge of the Boston Seaman's Friend Society, or if he had, that he regarded it as a separate society or association. We consider it also proved, that there was an association, not incorporated, but clearly and distinctly identified, organized as a charitable society, holding annual meetings, having a president, secretary, and other suitable officers, publishing annual reports, and appealing to the public for charitable assistance, known and designated by the name of the· Seaman's Aid Society ; that this society was principally, if not wholly, composed of and managed by females, and had for its general object the temporal and spiritual benefit of seamen.  It is also, we think, well proved by the circumstances which preceded and attended the execution of the will, as shown by extrinsic evidence, that it was the intention of the testator to make the bequest in question to the former of these societies, and, at the time of the execution of his will, he believed that he had done so, by the name and designation that he had used ; but that the name thus used in the will was not the proper name and designation of the society to whom he intended to make the bequest, but was the precise and proper name of the latter society, having the same general object in view, but conducted and managed by different persons, and being a society to which the testator did not intend to make the bequest.  It is also proved that the testator was led into this mistake by erroneous information, honestly given to him by Mr. Baker, who drew his will, not intending to mislead or deceive him, but truly to inform him ; that Mr. Baker knew of the latter society, in Boston, had seen its reports, knew that it had some connexion with Mr. Taylor, and had that society in his mind when he mentioned that society to the testator, erroneously believing that it was the society intended by him, and gave the true name of the latter society to him ; that the testator acted on this erroneous infor

mation — erroneous as to his real purpose, as it now appears by the evidence — and made the bequest to the Seaman's Aid Society, by their precise name and designation, to wit, " the Seaman's Aid Society in the city of Boston."

It is therefore the case, where the testator makes a bequest to one by his proper christian and surname, and place of residence, erroneously believing that he holds a certain relation, as, for instance, that he is the son of an old friend, having been so informed by one who thought he knew, and believed the person so designated to be the son of the testator's old friend ; whereas in fact, as proved afterwards, a man of the same surname, but a distinct christian name, and living in another town, was the son of the old friend — the person whom the testator intended to benefit by the bequest.

It is not easy to reconcile all the cases on the subject of the admission of extrinsic evidence to control or explain, or in any way give effect to, the terms of a will, and to extract from them a general rule with all its exceptions and qualifications. In general, no extrinsic evidence of the intention of the testator is admissible to control or alter the written provisions of a will. It would be contrary to the general rule of the common law, viz. that where a party has expressed his contract or his testament in writing, duly executed, such writing is in its nature better evidence of his intentions than any extrinsic evidence could be. But another and more conclusive reason is, that the law requires a will to be executed in presence of three witnesses, and with other solemnities calculated to insure correctness, and guard against mistake and imposition ; and without this precaution, every act and instrument purporting to give property, real or personal, by will, is inoperative and void. Since the revised statutes, the old law requiring three witnesses to a devise of real estate, is extended to bequests of personal property. Rev. Sts. c. 62, § 6. If therefore it could be proved by a dozen witnesses, beyond all doubt, that a man intended to make a will and give his property in a particular way, and to give nothing more, and gave instructions to have a will to that effect written, but before it could be written he was suddenly killed, it could

not take effect. So if he in fact executed a will in which a leg-
acy was omitted, that was intended to be given, expressed in the
written instructions, and proved by the testimony of the scriv-
ener, and the production of the minutes. So where a bequest
is inserted, but the name or the description of the legatee is left
blank. In the one case, it would be to establish, by parol evi-
dence, a testamentary bequest, which the law declares to be void,
unless in writing and witnessed; in the other, it would give greater
weight to an unexecuted memorandum, or to *vivâ voce* testi-
mony, than to an instrument formally executed, and would
equally violate the statute requiring the execution of a will to
be attested before it can take effect as such.

The general rule certainly is, that the intent of the testator
is to govern in the construction; but it is the intention ex-
pressed by the will, and not otherwise. To get at the intention
expressed by the will, every clause and word are to be taken
into consideration, because one clause is often modified and
explained by another ; every implication, as well as every
direct provision, is to be regarded. And further ; as a will
must necessarily apply to persons and things external, any
evidence may be given of facts and circumstances, which have
any tendency to give effect and operation to the words of the
will ; such as the names, descriptions and designations of
persons, the relations in which they stood to the testator, the
facts of his life, as having been single or married one or more
times, having had children by one or more wives, their names,
ages, places of residence, occupations ; so of grandchildren,
brothers and sisters, nephews and nieces, and all similar facts.
And the same kind of evidence may be given of all facts and
circumstances attending the property bequeathed, its name,
place, and description ; as by its former owner, present occu-
pant, or otherwise. If, when the will comes to be thus applied,
there is no reasonable doubt as to the persons and things
intended, there is no room for any further admission of evi-
dence, to show the intent of the testator. As to the identity
of the persons and things mentioned in the will, the same rules
will apply as apply to deeds or other instruments. If in the

18

matter of description there is a mistake, that is, if there is no one who corresponds to the description in all particulars, but there is one who corresponds in many particulars, and no other who can be intended, such person will take. So of the property given; if it be a farm, for instance, corresponding in several particulars with one owned by the testator, though differing in some one, but there is no other corresponding with it at all, such farm will be held to pass.

Still, however, there is a well defined class of cases, wherein extrinsic evidence of the actual intention of the testator is admissible, which is that of equivocation, or latent ambiguity. It is the case where the will is plain and clear on its face, and only becomes doubtful when applied to the subject matter. The testator, for instance, gives the manor of Dale to his nephew John Smith, and, in applying the will to the property, it appears that the testator had two manors of Dale, or two nephews named John Smith, and no inference can be drawn, from other parts of the will, or the circumstances and relations of the testator, to indicate which was meant. Perhaps it would be more consistent with principle, if this were a new question, to hold that such a bequest is void for uncertainty, and so let in the heir; it being in truth impossible to see, by the will, which nephew took, or which estate passed. But as the will does clearly describe a particular estate, and names a person in being as the object of the testator's bounty, it was early held as the legal construction of the statute, that from the *necessity* of the case, extrinsic evidence must be admitted to show which was intended. *Doe* v. *Chichester*, 4 Dow, 65, 93. But in the same case, in the house of lords, it was held by the unanimous opinion of the judges, that where land was identified, in a will, by its designation of " my estate of Ashton," and there was an estate in the parish of Ashton, it was not competent to introduce extrinsic evidence to show that other lands, not in Ashton, were intended by the testator to be included; because the description in the will limited the estate to lands within the parish named, and that left no room for extrinsic evidence of intent

This general principle is asserted and maintained in a recent case in which the authorities were fully reviewed, and the principles of this branch of the law were explained with great clearness. *Doe* v. *Hiscocks*, 5 Mees. & Welsb. 363. In that case, the eminent judges who decided it fully recognized the authority of *Miller* v. *Travers*, 8 Bing. 244, and 1 Moore & Scott, 342.

That case of *Miller* v. *Travers* is of very high authority, and has a strong bearing upon the present. It was a case in chancery, but was the joint decision of the Lord Chancellor, and Chief Justice Tindal and Chief Baron Lyndhurst, assisting him. The actual devise was of all the testator's real estate in the county of Limerick, and in the city of Limerick. At the time of making his will, he had no real estate in the county of Limerick, but a small real estate in the city of Limerick, and considerable real estate in the county of Clare. Evidence was offered to show that the testator intended to include the estate in the county of Clare; that it was in fact embraced in the form of a will, directed and approved by the testator; that this draft was sent to a conveyancer, to make some alterations in other particulars; that he inadvertently, and without authority, struck out the word Clare, so that the estate there situated was not included, and that the testator, after keeping it some time, executed it, without perceiving the omission. It was considered on the assumption that the extrinsic evidence, if admissible, would show that Clare was omitted by mistake, and that the land in that county was intended to be included in the devise. But it was held that the evidence was not admissible. It was also decided, that it would make no difference, in this respect, if it were apparent from the insufficiency of the estate mentioned to meet the charges upon it, or from other circumstances, that some mistake had been made; still it would not be admissible to show that the testator intended to devise property, which had been omitted by mistake. There was a subject matter upon which the will could operate, and it must be limited accordingly. There was no designation by name or description, imperfect or otherwise, which could extend the will so as

to include estate in the county of Clare; the evidence of intention therefore, however strong, could only show a purpose to devise, unexecuted by the will; and to give it effect as a devise would be to establish a devise by parol evidence, or evidence extrinsic to the will, against the express provisions of the statute of wills.

This case is full of instruction upon this subject, and if its authority is admitted, it is decisive of the present. We think the same principle has been adopted and sanctioned in other States, and in this. *Jackson* v. *Sill,* 11 Johns. 201. *Richards* v. *Dutch,* 8 Mass. 506. *Farrar* v. *Ayres,* 5 Pick. 404. *Crocker* v. *Crocker,* 11 Pick. 252. *Brown* v. *Salstonstall,* 3 Met. 423.

The principle established by the cases is, that the estate must pass by the will. If the will applies definitely to two or more persons, so that either would be entitled to take it, under the will, but for the existence and claim of the other, then parol evidence is admissible to prove which was intended. When that proof is supplied, the will operates, by its own force and terms, to give the property to that one, as if such person had been the only one named or described. The evidence does not create the gift, but simply directs it. Where the name or description, used in the will, does not designate, with precision, any person, but where, when the circumstances come to be proved, so many of them concur to indicate that a particular person was intended, and no similar conclusive circumstances appear, to distinguish and identify any other person, the person, thus shown to be intended, will take. Such was the case of *Beaumont* v. *Fell,* 2 P. W. 141, where a legacy to Catherine Earnley was held to be good to Gertrude Yardley; for although both the christian and surname were mistaken, yet the description sufficiently identified the person, and there was no other person to whom it would apply at all. To the same point is *Parsons* v. *Parsons,* 1 Ves. jr. 266. See 12 Adolph. & Ellis, 451.

When there is no person, taking name and description together, who answers to the name and description in the will, and upon the proof of facts and circumstances to enable the

court to infer who was intended, if the proof does not so predominate in favor of either as to enable the court to determine who was intended, still extrinsic evidence, to show whom the testator intended, will not be admitted, but the bequest will rather be held void for uncertainty. *Thomas* v. *Thomas*, 6 T. R. 671.

With these views of the law, the court are all of opinion, that the Seaman's Aid Society of the city of Boston, or rather their treasurer, in trust for them, is entitled to take the legacies in question. That society is clearly and distinctly designated, by its name and the description of its place of existence and operation. Indeed, it was the society, as appears too by the extrinsic evidence, intended and designated by him, at the time of making his will, and directed by him to be inserted ; though there is no doubt that he was induced so to insert it by the incorrect information inadvertently given him at the time. The Seaman's Friend Society, either of New York or Boston, cannot take, because the name and description are not those by which they have ever acted or been known or designated ; and because the Seaman's Aid Society is the one precisely named and described in the will. Had there been but one charitable society established for the relief and benefit of seamen, and that one the Seaman's Friend Society, the evidence to be derived from the facts and circumstances, combined with a name very near the one mentioned in the will, and a description indicating the purposes to which the gift was devoted, in the absence of any other claim on the part of any similar society, would have been very strong, without direct proof of intention, to show that the Seaman's Friend Society was intended ; and if so, they would be entitled to take the legacy by the established rules of law.

I intended to notice more particularly the cases cited for the Seaman's Friend Society, but most of them have already been alluded to.

The case of *Powell* v. *Biddle*, 2 Dall. 70, is certainly strong for supporting the intent, proved by extrinsic evidence, against the claim of a person precisely named and described It was a

case decided by the Philadelphia court of common pleas, many years ago, and seems to us contrary to the decisions, and cannot be considered as of high authority. *Careless* v. *Careless*, 1 Meriv. 384, is a plain case of latent ambiguity. It was a gift to a nephew Robert, son of the testator's brother Joseph. The testator had two nephews, but neither the son of Joseph. The name was equally applicable to both; the description equally inapplicable to either; and therefore extrinsic evidence of intention was rightly received, to remove the ambiguity.

The present is not a case of latent ambiguity, for the reasons already stated. On the face of the will all is plain and clear. When the will comes to be applied, there are found to be two societies; one rightly named and described, the other not. There is then no ambiguity as to the society intended by the will. It is the offer of proof of intent *aliunde* which creates the doubt, and this is clearly inadmissible, under the rule applicable to such a case.

For the same reason, there is no ground to contend that this bequest is void for uncertainty. There is no uncertainty in the terms of the will, or of its application to the society named and described. It is the extrinsic evidence, which is offered, in order to create a doubt of the testator's intent, and to prove that his intent was not expressed by his will. This creates no uncertainty which can render the bequest void. The court are therefore all of opinion, that the treasurer of the Seaman's Aid Society is entitled to a decree.