BUCHANAN's Lessee vs. STEUART.

DECEMBER.

APPEAL from *Baltimore* County Court. This was an action of ejectment for all that part of a lot of ground situate in the city of *Baltimore,* being part of a lot of ground distinguished on the plot thereof by the number 25, beginning for the said part at the end of 115 feet from the S W corner of *Conawago* and *Charles-streets,* where they intersect each other, and running thence, binding on *Charles-street* 27 feet to *Mushberger's* line, thence westerly 150 feet 6 inches, more or less, to *Liberty,* or 10 feet lane, thence N Easterly, binding on said *Liberty* or 10 feet lane 36 feet, and thence with a straight line to the beginning. The defendant, (now appellee,) took defence on warrant, and plots were made.

1. At the trial the plaintiff offered in evidence a grant to *Thomas Todd* for *Todd's Range,* dated the 8th of

T and E, by their deed of bargain and sale, conveyed to R "all that lot or parcel of ground situate and lying in *Baltimore-town,* which i known and distinguished on the plot of said town by the No. 25, and beginning for the same at," &c. describing the same by courses and distances, "to have and to hold the same, and every part thereof, unto the said R," &c—Held, that the whole of the lot passed by the general description of all that lot No. 25, although it was not included within the special description by course and distance.

Parol evidence is inadmissible to prove that is was the intention of a grantor, in a deed of bargain and sale, to convey a lot of ground by the courses and distances used therein, and not to convey the whole lot.

August 1720. And proved that the lot of ground designated on the plot exhibited, and which was made evidence by the consent of the parties, beginning at A and running to B, to C, to D, and thence to A, was and is part of *Todd's Range*, and is a true location of the lot of ground distinguished on the plot of the city of *Baltimore* by the lot No. 25; and that a certain *Richard Croxall*, being seized of the said lot of ground, by his last will dated the 10th of April 1783, devised to his wife *Eleanor Croxall*, and her heirs, all that part of the said lot of ground, which is described as follows on the plot—Beginning at F, running to B, to C, to 12, thence to F. The other clause in the will, necessary to be mentioned, was—"I also give my nephew *Richard Croxall*, his heirs and assigns, for ever, my tracts of land called," &c. "also part of the lot or lots of land, with the improvements thereon erected, lying and being in *Baltimore-town*, within the following limits, viz. Beginning at the first beginning of the lot number 23, at the intersection of *Charles* and *Market-streets*, and running thence, bounding on *Charles-street*, then W until it intersect the ground leased by me to the said *Andrew Buchanan*, then bounding on the said ground, and running S until it intersects *Market-street*, then bounding on *Market-street* E to the beginning, save and except thereout the part of the said lot conveyed by me to the said *Andrew Buchanan*, on which his warehouse is erected on *Charles-street;* and also save and except part of the said lot already conveyed by me to my nephew *James Croxall*, and also save and except my brick warehouse, with the ground it stands on, which is lately sold. I also do appropriate, and it is my will and desire, that the ground under the following limits shall be open for an inlet to my improved ground, so long as the owner or possessor of the said improved ground may think it convenient or proper, viz. Beginning at the N end of *Andrew Buchanan's* warehouse, and running N on *Charles-street* 13 feet W parallel with *Market-street*, to *Andrew Buchanan's* ground, then S 13 feet parallel with *Charles-street*, then E parallel with *Market-street*, to the beginning. *Item.* I give and bequeath to my nephew *Richard Croxall*, his heirs and assigns, for ever, the part of my unimproved ground in *Baltimore town*, under the fol-

1813.

Buchanan
vs
Stewart

lowing limits, viz. Beginning at the distance of 43 feet
from the N end of *Andrew Buchanan's* warehouse, and
running thence and bounding on *Charles-street* 99 feet, then
W parallel with *Market-street*, to intersect the western
limits of my said ground, then bounding on the said limits
and *Andrew Buchanan's* ground, until it intersects the
W line of the ground conveyed by me to *Rachel Croxall,*
and her son *Richard*, and thence E parallel with *Market-
street* to the beginning. *Item.* I give and bequeath to my
niece *Mary Howard*, her heirs and assigns, for ever, part
of my improved ground in *Baltimore town*, under the fol-
lowing limits, viz. Beginning at the distance of 142 feet
from the N end of *Andrew Buchanan's* warehouse, and
running thence N on *Charles-street* 33 feet, then W pa-
rallel with *Market-street* to intersect the western limits of
my said ground, then with the said limits until it inter-
sects the W line of my bequest by this my will to my
nephew *Richard Croxall*, and then E parallel with *Market-
street* to the beginning. *Item.* I give and bequeath to my
dear and loving wife, her heirs and assigns, for ever, all
the remaining part of my unimproved ground in *Balti-
more town*, under following limits, viz. Beginning at the
distance of one hundred and seventy-five feet from the N
end of *Andrew Buchanan's* warehouse, and running
thence N on *Charles-street* to the utmost limits of the said
ground, then on *Conawaugoe-street* with the extent thereon,
then with the lane until it intersects the W line of my be-
quest to my niece *Mary Howard*, and then E parallel
with *Market-street* to the beginning." "And in case my
said nephew *Richard Croxall*, should not be living at the
time of my decease, but not otherwise, then it is my will,
and I do hereby give and devise to my nephew *James
Croxall*, all the real estate," &c. "I have by my said will
given and devised to my said nephew *Richard Croxall*,"
&c. *Richard Croxall*, the testator, afterwards died seized
of the said lot of ground, and *Eleanor Croxall*, after the
death of *Richard*, and on the 6th of February 1804, by
deed duly executed, acknowledged and recorded, convey-
ed to the lessor of the plaintiff, *George Buchanan*, and his
heirs, all that part of the said lot of ground so as aforesaid
devised, which is described on the plot as follows, and
for which the present ejectment is brought—Beginning
at M, running to N, to C, to O, thence to M. The said

part is described in the said deed as follows, to wit: "All that part of a lot of ground, situate and being in the city of *Baltimore*, being part of the original lot of *Baltimore-town*, distinguished on the plot thereof by the number 25, beginning for the said part hereby given," &c. "at the end of 115 feet from the S W corner of *Conawago* and *Charles-streets*, where they intersect each other, and running thence parallel and binding on *Charles-street* 27 feet, to *Mushberger's* line, thence westerly 150 feet 6 inches more or less, to *Liberty* or 10 feet lane, thence N easterly binding on said *Liberty* or 10 feet lane, 36 feet, and thence with a straight line to the beginning." The plaintiff further proved, that *Charles-street* and *Conawago-street* in the city of *Baltimore*, are truly located on the plot. The defendant claimed title to all that part of lot No. 25, which is designated on the plot as follows: Beginning at N, running to B, to C, and thence to N. And to shew a title in *Thomas Gittings* and *Eleanor Croxall*, under whom he claimed, and that *Richard Croxall* did not die seized of the property described in the ejectment, read in evidence a deed from *Richard Croxall* to *Thomas Gittings*, dated the 22d of March 1784, for "all that lot or parcel of ground situate and lying in *Baltimore-town*, which is known and distinguished on the plot of said town by the No. 25, and beginning for the same at the N end of *Charles-street*, on the W side thereof, where it intersects *Conawago-street*, and running thence S, bounding on *Charles-street*, 60 feet, thence W to *Liberty*-lane, then with the lane to *Conawago-street*, then with *Conawago-street* to the place of beginning. To have and to hold the said lot or parcel of ground above described, and premises, unto the said *Thomas Gittings*, his heirs and assigns, forever, &c." And a deed from *Thomas Gittings*, and the before mentioned *Eleanor Croxall*, to him the defendant, dated the 8th of May 1801, for "all that lot," &c. (describing it as mentioned in the above deed from *Richard Croxall* to *Thomas Gittings*,) "to have and to hold the same and every part thereof, unto the said *Richardson Steuart*, his heirs and assigns," &c. The defendant further gave in evidence, that the deed from *Richard Croxall* to *Thomas Gittings*, not being recorded within the time prescribed by law, an application was made by *Thomas Gittings* to the court of chancery for the purpose of having the said

1813.

Buchanan
vs
Stewart

deed recorded according to the act of assembly in such case made and provided, and that after due proceedings were had thereon, the chancellor, by his decree dated the 15th of May 1802, ordered said deed to be recorded, which was done. The plaintiff then proved, that the ground included in the metes and bounds, courses and distances, mentioned in the said two last mentioned deeds, begins on the plot at H, and runs to I, to J, to K, and then to H. He further proved, that that part of lot No. 25, which is devised by the will of *Richard Croxall* to *Mary Howard*, is truly located on the plot as follows: Beginning at 5, running to N, thence to C, thence to 2, thence to 1. And that *Mary Howard* died before *Croxall*, the testator. And that that part of lot No. 25, which was devised by *Richard Croxall* to *James Croxall* by said will, beginning on the plot at A, runs to 1, to 2, to D, to A, and that *James Croxall* was, at the death of *Richard Croxall*, his sole heir at law. He also proved by *James Croxall* that *Thomas Gittings* never made any claim on him, or set up any title or claim, to his knowledge, to that part of lot No. 25 which he, *James Croxall*, took under the will of *Richard Croxall*, or to that part of lot No. 25 which he, *James Croxall*, inherited as heir at law to the said *Richard Croxall*. The defendant then prayed the court to direct the jury, that upon the foregoing facts, and under the construction of the aforesaid deeds, the plaintiff was not entitled to recover. This opinion the court, [*Nicholson* Ch. J.] gave to the jury. The plaintiff excepted.

2. The plaintiff then prayed the court to direct the jury, that if they should be of opinion from the evidence, that it was the intention of *Richard Croxall* to convey to *Thomas Gittings* only that part of lot No. 25 which is contained in the metes and bounds, courses and distances, expressed in the deed from *Richard Croxall* to *Thomas Gittings*, and that it was the intention of *Thomas Gittings* and *Eleanor Croxall*, only to convey to the defendant that part of lot No. 25 which is contained in the metes and bounds, courses and distances, expressed in the deed from *Eleanor Croxall* and *Thomas Gittings* to the defendant, then the plaintiff was entitled to recover. The court refused to give this direction. The plaintiff excepted; and the verdict and judgment being against him he appealed to this court.

The cause was argued before CHASE, Ch. J. and BU-CHANAN, EARLE and JOHNSON, J.

*W. Dorsey*, *Harper* and *Brice*, for the Appellant, stated that the question was, whether or not the whole of lot No. 25 was conveyed by the deed from *Richard Croxall* to *Thomas Gittings*, or only the part agreeably to the particular description in that deed? They contended, that there being two descriptions in the deed, one general, and the other special, the special description was to govern. They referred to *Shep. T.* 89, 95, 99, 100. *Co. Litt.* 42. *Hawkins vs. Hanson*, 1 *Harr. & M'Hen.* 523. *Helms's Lessee vs. Howard*, 2 *Harr. & M'Hen.* 87; and *Carroll et al. Lessee vs. Norwood*, 1 *Harr. & Johns.* 173.

*Martin*, and *Pinkney* (Attorney General U. S.) for the Appellee, cited *Shep. T.* 88, 95, 98, 99, 246. *Bac. Ab.* tit. *Grant*, (H) 662. *Lodge's Lessee vs. Lee*, 6 *Cranch*, 237. The act of 1715, *ch* 47, *s.* 10. *Carroll et al. Lessee vs. Norwood.* (5 *Harr. & Johns.* 163, 164.) *Gittings Jrs. Lessee vs. Hall*, 2 *Harr. & Johns.* 117. *Howard vs. Moale, et al. Lessee, Ibid* 249, 263. *Dorsey's Lessee vs. Hammond*, 1 *Harr. & Johns.* 193; and *Co. Litt.* 183.

CHASE, Ch. J. delivered the opinion of the court. The question in this case arises on the legal effect and operation of the deed from *Eleanor Croxall* and *Thomas Gittings*, to *Richardson Steuart*, the defendant below, as to the quantity of the land conveyed by it to *Steuart*. In deciding this question, the court must be governed by those rules and principles of the law, which have been established by the courts of justice, and resorted to by them in expounding deeds.

It is true, and has been conceded, that there are no technical or precise form of words appropriated by law, as exclusively or particularly necessary in the description or designation of the thing to be granted.

It is equally well established, that the intention of the parties should prevail in expounding deeds, if not repugnant to some principle or maxim of the law, which is to be collected from the whole of the deed.

It is a position not to be controverted, that a deed is to be construed most beneficially for the grantee, whenever there is a necessity for resorting to that maxim.

1813.
Buchanan
vs
Steuart

The apparent intention on the face of the deed is, that all of the lot No. 25, should pass to the grantee. And the general words, all the lot No. 25, and which is known and distinguished on the plot of the town by No. 25, are fully competent to transfer the whole; there is nothing in the additional description by course and distance, from which it can be intended or inferred, that the general description was to be limited or modified, but it is to be presumed that it corresponded with the general description, and was inserted to define the location of the lot No. 25, and show its true position; and there is not any thing appearing in the deed indicative of an intention to convey less than the whole lot.

On the location of the lot No. 25, according to its true limits, it appears that 60 feet south with *Charles-street* will not extend to the end of the line of that course, so as to gratify the subsequent runnings, and include the whole of the lot No. 25, in conformity to the general description.

What then is the true construction of the deed, having respect for the principles laid down? If the specific or additional description is adhered to, the general description must be rejected, and the intention of the parties, apparent on the deed, disregarded, and a construction will prevail in subversion of the principle, which declares that the deed shall be construed most beneficially for the grantee.

By elongating the south course to the end of that line, the general description is complied with, the subsequent runnings gratified, the whole of the lot included, and the apparent intention of the parties fulfilled; or if the general description is adhered to, and the particular rejected, the intention of the parties appearing on the deed will be effectuated, and a construction given most beneficial for the grantee.

The collateral circumstances, that the grantors did not hold all the lot No. 25, cannot affect the construction. The deed will pass the whole, if they had the whole, or whatever part they possessed less than the whole, and it cannot be inferred, from that circumstance, in contravention of what appears in the deed, that it was intended by the parties to transfer only that part included within the specific or additional description, and more especially as the grantors, at the time of making the deed, held more of the lot than is contained within the said description.

**1813.**

Buchanan
vs
Steuart

The Court concur with the court below in the opinions expressed in each of the bills of exceptions.

BUCHANAN, J. This case depends upon the true construction of the deeds from *Richard Croxall* to *Thomas Gittings*, and *Thomas Gittings* and *Eleanor Croxall* to *Richardson Steuart*, and the only question for decision is, whether they respectively passed the whole of the lot No. 25, or only so much thereof as is embraced within the courses and distances expressed? The leading principle in the interpretation of deeds is, that the construction be made upon the whole of the deed taken together, and not upon disjointed parts of it, so that every part, if possible, be made to take effect, as nearly, according to the intention of the parties, as the rules of law will admit. No technical form of words is necessary, but the parties, who may be presumed acquainted with the subject matter of the contract, are left to the use of such words of description as are best suited to the thing intended to be conveyed. The construction, therefore, should be, "reasonable and agreeable to common understanding." With this guide I have endeavoured to arrive at the intent and meaning of the parties to the deeds in question, and it appears to me that no more of lot No. 25 was intended to be passed, than that part which is embraced within the courses and distances set out.

The courses and distances include but a very small proportion of the whole lot, and it is difficult to believe that *Croxall* and *Gittings* did not know the extent of the lot at the time of executing the deed between them, and that the courses of that deed included only a part of it. If the courses had been omitted, the whole lot would have passed by the preceding general words of description, "all that lot," &c. and it would have been unnecessary to resort to courses and distances, or any other description, if it was the intention of the parties that the whole should pass. It is evident then, that the parties did not mean to effect their purpose by the use of the general description or designation of the lot, by its number on the plot of *Baltimore-town*, or to rely upon it as the description of the thing intended to be conveyed; for if they did, they would not unnecessarily have resorted to *another* more precise. The object, therefore, of inserting the courses

1813.

Buchanan
vs
Stewart

and distances, seems to have been to designate particularly what was intended to be conveyed.

To rely upon the number of the lot alone for coming at the intention of the parties, would be to exclude the courses and distances, or qualifying expressions, in violation of the rule, that "the construction be made upon the entire deed, and not merely upon disjointed parts of it," the courses and distances evidently appearing upon the plots in the cause, not to be co-extensive with the whole lot.

But if the rule is adhered to, each part of the description will have its office; the number of the lot, as designating the general object of the parties in pointing out the place or thing to which the courses and distances are meant to be applied, and the courses and distances as restricting the general object, and defining the particular part of it intended to be conveyed. There is no necessity for rejecting either part of the description, but the generality of the first part may, and, I think, ought to be restricted by the latter, to come at the intention of the parties, and thus every part of the deed may be gratified.

It is laid down in books of authority, that if a man grants "*his manor of Dale*," without saying where it lies, it is a good grant, and the whole manor passes; but that if he grants "*his manor of Dale in Dale*," and a part of the manor lies in *Dale*, and a part in some other place, that part of the manor only which lies in *Dale* will pass, and for this reason, that the general description by name, which if it stood alone would pass the whole manor, is limited and restricted by the subsequent qualifying words *in Dale*, which show the *intention* of the parties, that no more than the part lying in *Dale* should pass.

In this case the grant is of "all that lot or parcel of ground situate, lying and being in *Baltimore*-town, which is known and distinguished on the plot of said town by No. 25, and beginning for the same at the south end of *Charles*-street on the west side thereof, where it intersects *Conawago*-street, and running thence south, binding on *Charles* street, sixty feet, thence west to Liberty-lane, then with the lane to *Conawago*-street, then with *Conawago*-street to the beginning."

The words "situate, lying and being, in *Baltimore*-town," are certainly only descriptive of the place where

1813.

Buchanan
vs
Steuart

the lot lies, and no other office can be assigned them, and the only office of the words "known and distinguished on the plot of said town by No. 25," is to set out the name or number of the lot, and can have no more force than any other description of land by name would have in the construction of a deed.

The case then stands as if the expressions were "all that lot or parcel of ground called No. 25," which certainly are not more general than the words "my manor of *Dale*," and the subsequent qualifying expressions "beginning," &c. are not less restrictive than the words "*in Dale*," in the case put, from which, and other similar and equally strong cases to be found in the books, I cannot distinguish this. The case of *Lodge vs. Lee*, cited from *Cranch*, and the cases of *Gittings vs. Hall*, and *Howard vs. Moale*, do not, I think, affect this case. The intention of the parties, when it can be ascertained, and not the strict and precise signification of the words used, is to be regarded; the true construction, therefore, of every deed, must depend upon its own expressions, and in this case, without resorting to the rule "*verba fortius accipiuntur contra proferentem*," which is not favoured in law, and "never to be relied upon but where all other rules of exposition fail;" but construing the deed from *Richard Croxall* to *Thomas Gittings*, according to the intention of the parties, as it seems manifest to me, I am of opinion, that nothing more passed than what is contained within the courses and distances; and that the deed to *Richardson Steuart*, having the same expressions with those used in the deed to *Gittings*, must receive the same construction.

It is therefore my opinion, that the appellant is entitled to recover, and that the judgment of the court below ought to be reversed on the *first* bill of exceptions, but affirmed on the *second*, it being clearly the province of the court, and not the jury, to give construction to the deeds in question.

JUDGMENT AFFIRMED.

*Plot referred to in the case of Buchanan vs. Steuart.*