McNulty *v.* Prentice.

[OSWEGO GENERAL TERM, April 2, 1855. *W. F. Allen, Pratt, Hubbard* and *Bacon,* Justices.]

---◆---

## McNULTY *vs.* PRENTICE.

Where parol evidence, in explanation of a written instrument, is offered by way of defense, not to show the existence of a mistake, but to explain one patent on the record, it is admissible.

Thus where an indenture of apprenticeship was executed in duplicate, each party retaining a copy, and the counterpart produced by the plaintiff stated the term of the apprenticeship to be two years, *two* months and fifteen days, while the one in the possession of the defendant stated the period to be two years *ten* months and fifteen days; and the defendant offered to prove, by parol evidence, that in the indenture produced by the plaintiff there was a clerical error on the part of the scrivener, who wrote the same, by which the word "two," before months, was written for "ten," and that it was intended by the parties that the word "two" should have been written "ten;" *Held* that the testimony should have been received.

THIS action was originally commenced in the city court of Brooklyn. The plaintiff complained that on or about the 20th day of May, 1853, he being of the age of 18 years, two

months and fifteen days, a foreigner, and without a parent or guardian in this country, bound himself by indentures under seal, to serve the defendant as an apprentice for two years, two months and fifteen days, then next ensuing, to learn the art and trade of finishing silk hats; that the defendant, by said indentures, bound himself to use the best of his endeavors to cause the plaintiff to be taught the art and trade of finishing silk hats, and pay him $3 a week for the first year; $3.50 a week during the second year, and $4 a week during the remainder of the term; that the plaintiff performed the agreement on his part, and worked for the defendant two years, two months and fifteen days; that the defendant neglected to fulfill the agreement on his part, failed to cause the plaintiff to be taught in the art of making silk hats, except for a few weeks, and kept the plaintiff the remainder of the term at work on soft hats, to his damage $1000; and that the defendant had neglected to pay the plaintiff his weekly wages, to the amount of $57. The answer of the defendant denied all knowledge of the age of the plaintiff, and denied that the period for which he bound himself to the defendant was two years, *two* months and fifteen days; but alleged that he bound himself for two years, *ten* months and fifteen days. The answer further denied that the plaintiff performed the agreement on his part, and alleged that the plaintiff only worked a part of the time he agreed to work for the defendant. The answer further denied that the defendant neglected to fulfill his agreement, or that he failed to cause the plaintiff to be instructed in finishing silk hats; or that he had neglected to pay any wages to the plaintiff. The answer further alleged that the plaintiff had neglected and refused to work for the defendant for the time mentioned in the agreement, and had left the service of the defendant, to his damage of $200, which the defendant claimed to *recoup.* The action was tried before a jury, in December, 1855. The testimony on the part of the plaintiff consisted, among other things, of the articles of apprenticeship, first set forth in the case, by which, among other things, the plaintiff bound himself for the term of two years, *two* months and fifteen days; and by which the de-

fendant undertook to cause the plaintiff to be instructed in finishing silk hats. On the part of the defendant was introduced the counterpart of said articles of apprenticeship, by which the plaintiff bound himself as an apprentice to the defendant for the term of two years, *ten* months and fifteen days. It also appeared that the plaintiff left the service of the defendant on the 4th or 5th of August, 1855, after the expiration of two years, two months and fifteen days, but before the expiration of two years, ten months and fifteen days from the commencement of his term. An offer was made, on the part of the defendant, to prove by parol evidence, that the word "two," in the fourth line of the indentures produced by the plaintiff, was a clerical error, and that it was intended by the parties that the word "two" should have been written "ten," which offer was overruled by the court, and exception taken to the decision. A verdict was found for the plaintiff for $240, and judgment entered thereon, with costs. A motion was subsequently made in the city court, for a new trial, on a case made, which was denied, and an order to that effect made. The defendant appealed to this court, from said judgment and order.

*S. D. Lewis,* for the plaintiff.

*A. Hadden,* for the appellant.

*By the Court,* BIRDSEYE, J. The plaintiff was bound as an apprentice to the defendant, on the 20th of May, 1853. At the expiration of *two years, two months* and *fifteen days,* and on the 4th of August, 1855, he left the service of his employer, and a few days after brought this suit against him, to recover damages for the want of proper instruction in his trade.

On the trial, the plaintiff proved an indenture of apprenticeship, containing an agreement on the part of the plaintiff to serve for two years, *two* months and fifteen days; that he had so served, and had not been properly instructed in his trade. The defendant set up the non-performance by the plaintiff of

a condition precedent, to wit, the service of the plaintiff for the period of "two years, *ten* months and fifteen days." And to prove the same, offered in evidence a counterpart to the indenture read by the plaintiff, in which counterpart the plaintiff bound himself to serve for that period. At the argument before us, much stress was laid upon the fact that this counterpart was not acknowledged by the apprentice in the manner required by 2 *R. S.* 156, § 13. The sufficiency of the acknowledgment cannot here be inquired into. The execution of both the original indenture and of the counterpart, was duly admitted. The plaintiff's counsel objected, indeed, to the reading of the counterpart, but only generally. This ground of objection was not pointed out, as it should have been. It cannot be first raised upon the hearing of the appeal.

The defendant's counsel then offered to prove, by parol evidence, that in the statement of the length of the term of apprenticeship, in the articles read in evidence by the plaintiff, there was a clerical error, on the part of the scrivener who wrote the same, by which the word " two," before "months," was written for " ten," and that it was intended by the parties that the word " two" should have been written " ten." This testimony was objected to by the plaintiff, and excluded by the court. The correctness of this ruling is the only point presented on this appeal.

A contract (*con-traho*) is a drawing together of minds until they meet. This agreement to do, or not to do, a particular thing, is the *contract*. By statute, (2 *R. S.* 155, § 1,) when this agreement is to bind an apprentice, it must be committed to writing. This writing, popularly speaking, and even in the statute (2 *R. S.* 155, 6, §§ 12, 13,) is called *the* contract; more accurately, it is *not* the contract, but the *evidence* of it. It is well settled, that when parties have committed their agreement to two or more contemporaneous writings of equal authority, neither is the *exclusive* repository of the intent of the parties, but both must be construed together, as one instrument.

In considering what is a sufficient written contract, under the statute of frauds, Starkie says, " the terms of the contract may

be collected from *several distinct papers*, provided they be connected by reference from one to another." (2 *Starkie on Ev.* 350, *5th Am. ed.*)

In *Cornell* v. *Todd*, (2 *Denio*, 130,) it was held, as it had often been held before, that several written instruments, executed at the same time, between the same parties, and relating to the same subject matter, should be construed together as forming parts of a single contract or conveyance. The court said it was not necessary that the instruments should in terms refer to each other, if in point of fact they were parts of a single transaction. That fact may be shown by extrinsic evidence. In *Hull* v. *Adams*, (1 *Hill*, 601,) Cowen, J., says: " Take, as you must, all the papers passing between these parties together, and consider them one instrument; for they were all executed at the same time, and relate to the same subject; you have then," &c. A subsequent judgment, conforming to this opinion, was, it is true, reversed upon error. (2 *Denio*, 306.) But it will be seen by comparing the proof offered at the last trial, as stated in 2 *Denio*, 308, with that given upon the first trial, (1 *Hill*, 602,) that there is a material difference between the fact sought to be proved upon the two occasions. The reversal is not put upon the ground of a mistake in the proposition that the writings, if contemporaneous and relating to the same subject matter, should be taken together. But the prevailing opinions in the court of errors take the proper distinction that the two notes were *prima facie* complete and independent agreements, wholly distinct from the contract of the maker of the notes in relation to the lease. As these notes and contracts did not appear, from any thing on the face of the papers, to relate to the same subject matter, that connection must be shown. And the right of the one party to establish one kind of connection between these papers, from the very nature of the case, gave his opponent the right to contradict that proof, by showing either that there was no connection, or that it was of a different kind from that set up by the plaintiff.

In the present case, there is no question as to whether the

two instruments sufficiently refer to each other, within the rule as laid down by Starkie, or what is the nature of the connection between them. It is admitted, on all sides, that there was but *one* agreement between these parties, of which these two dissimilar and contradictory, yet contemporaneous writings are the evidence. In the absence of statutory regulation they are equally binding, being of equal authority, and must be construed as one instrument. (2 *Starkie*, 350, 356, 357. 1 *Greenl. Ev.* § 283. *Rogers* v. *Kneeland*, 10 *Wend.* 218. 13 *id.* 114, *S. C. on error*.)

In this one instrument there is a variance in the two forms of expression, which were clearly intended to express the same idea. As the instrument stands, the expression of the number of months which the apprentice was to serve, reads "*two—ten months*." At the argument, this variance was spoken of, both as an *ambiguity* and a *contradiction*. The latter is clearly its proper designation. Although while the two papers are kept separate from each other, as doubtless they were till this suit was brought, each party being governed by the original in his possession, and probably having no knowledge of the variance from it in the other, it produces most, if not all, the usual consequences of a latent ambiguity.

Speaking of it as an ambiguity, then, could parol evidence be properly introduced to explain it, on the ground that it was *latent?* It is obvious that this is not the case of the use of *one* word, which is subsequently found to indicate *two* different persons or things, and to be equally descriptive of each; nor of the use of two different forms of expression for the purpose of indicating one person or thing, but which in reality point out *two*, owing to the existence of two subjects, one of which each word or expression exclusively indicates. (2 *Starkie on Ev.* 558.) The uncertainty here does not arise from the existence of any circumstances extrinsic to the instrument, which render it difficult to tell to which of several persons or things the words used are intended to apply. Nor is it the case to which the familiar rule applies, *falsa demonstratio non nocet.* Because neither of these two numbers can be said to be synony-

mous with, the *demonstratio* of, the other. The words *two* and *ten* express two different and incompatible ideas of number, and no person could have used both to express one idea. The error here manifestly does not arise from extrinsic circumstances, and cannot be explained by the maxim, *falsa demonstratio non nocet.* The ambiguity, if such it be, has its beginning, existence and end upon the face of the record. It is *patent,* and cannot be explained by parol.

But this variance, instead of being an *ambiguity,* is a *mistake ;* and a mistake quite as patent as any ambiguity could be. The words *two* and *ten,* as here used, are contradictory and incompatible. It is evident, upon the face of the agreement, that there has been a clerical error—a mistake. That such a mistake can be corrected in equity, there is no doubt. May it not also be shown by way of defense in this action ? In regard to patents for land, it is the well settled rule in this state, that they cannot be attacked collaterally. Being matters of solemn record, and issued under the great seal of the state, they ought only to be impeached by the well considered judgment of a competent judicial tribunal, in an action instituted for that especial purpose. (*Jackson* v. *Lawton,* 10 *John.* 23. *Jackson* v. *Hart,* 12 *id.* 83.) So, too, it is settled that a mistake in an award cannot be shown by parol; for an award is in the nature of a judgment, "and nothing extrinsic to that judgment can be offered in evidence to overturn it." It can only be impeached by the judgment of a court of equity, on a bill filed for that purpose. (*Kyd on Awards,* 328, 329. *Barlow* v. *Todd,* 3 *John.* 367.) Patents and awards, then, are matters of *record,* and of greater solemnity than private writings. It has been properly observed that the principle on which evidence is received to explain mistakes, in matters of contract between private persons, does not extend to the admission of evidence to show that a mistake or alteration has been made in records. (2 *Starkie on Ev.* 557.) The cases above cited, therefore, cannot be considered as authorities, when the question is upon the admissibility of the evidence, as here, to explain a private writing.

McNulty v. Prentice.

The question, too, whether a court of law will permit a plaintiff, bringing an action upon a contract in writing, to show by parol a mistake in that writing, is settled in the negative, both in this state and in England. All the text books, and all the adjudged cases, agree that resort must be had to equity in such a case. Indeed this head of mistake is one of the great grounds of the peculiar jurisdiction of a court of equity. The reason for this rule is that the courts of common law have felt unwilling to peril a salutary rule of evidence by making exceptions to it; and besides, they have not cared to invade the jurisdiction of equity to find principles to benefit him, who, having the choice of the two courts at the outset, elected to bring his suit at law. But these objections lose much of their force when urged against a defendant seeking to introduce parol proof of a mistake whereby he is likely to suffer. Before suit is brought, he may not know of the existence of the mistake in the counterpart held by the plaintiff, and even if he does, he is not bound to anticipate that the plaintiff will act in bad faith, and by seeking to take an unfair advantage of the mistake, put his (the defendant's) interests in jeopardy. There is therefore no reason why he should be required to ask that the mistake be corrected, until suit is actually brought. When it is, if he can show by parol that, either through fraud or negligence, the writing supposed to be the repository of the intent of the parties, is not such, is it not better that he shall do so, unless some inflexible rule of law prevents, than be compelled to stay the litigation and commence and complete an expensive and perhaps protracted suit in equity to correct the instrument. The courts exercising common law jurisdiction felt the force of this reasoning, long prior to the adoption of the code, and gradually relaxed the stringency of the former rule, until they permitted parol proof of fraud to be introduced, to nullify the contract. (12 *John.* 337. 1 *Cowen*, 250. 14 *Wend.* 26. *Id.* 195. 24 *id.* 419.) Why they should not, upon the same reasoning, let in the same evidence, in favor of a defendant, in cases of mistake, it is somewhat difficult to perceive; especially when, as here, the mistake

is plain upon the face of the writing, and the evidence is simply to show, not the existence of the mistake, but how it arose, and what was its extent. There is, in point of morals, but little difference between making a mistake for the purpose of obtaining a fraudulent advantage, and taking a fraudulent advantage of one accidentally made. To this effect there are sound authorities. In 2 *Starkie on Ev.* 556, *and note p.,* it is said: "Oral evidence is also admissible for the purpose of *correcting* a mistake; a practice more frequent in courts of equity than of common law. The usual, and certainly the safer course, in case of mistake, is to apply to a court of equity for relief, in the first instance; but a party is not obliged to resort to equity for relief; and there seems to be no reason why such evidence should not be received, by way of defense, in a court of law. In such cases, especially where recourse is had to a court of equity for relief, the extrinsic evidence is not offered to contradict a valid existing instrument; but to show that from accident or negligence, the instrument in question has never been constituted the actual repository of the intention and meaning of the parties." And it is added, at page 557: "Cases of this nature are nearly of kin to those of fraud; it is, in point of conscience and equity, an actual fraud to claim an undue benefit and advantage from a mere mistake, contrary to the real intention of the contracting parties."

There are, it is true, several *dicta* in the reports of this state, to the effect that courts of common law jurisdiction cannot admit parol evidence to show a mistake. Some of these cases have been expressly overruled, as 1 *John.* 138, and 7 *id.* 341, in 14 *John.* 210, and 16 *Wend.* 468. In others, the proof was wholly insufficient to show the mistake; as in *Jackson* v. *Croy,* (12 *John.* 427.) In *Jackson* v. *Foster,* (12 *John.* 488,) the proof was that the instrument, though given by design to one person, "was intended for the benefit of" another; no mistake of fact whatever being pretended. In other cases the offer to give parol evidence was made by the plaintiff, and so came within the reasons above cited. Of this class are *Patchin* v. *Pierce,* (12 *Wend.* 61,) and *Howes* v. *Barker,* (3 *John.* 506.) In still

other cases these remarks are unnecessary for the decision of the cases in which they occur. Of this kind is the intimation in *Fuller* v. *Acker*, (1 *Hill*, 476,) that as between the parties to the mortgage, oral evidence would have been inadmissible to explain an error clearly apparent in the date of the mortgage. The same is true of the remark of Cowen, J., in *Cameron* v. *Irwin*, (5 *Hill*, 276,) that "deeds cannot be rectified at law. Relief, if due to the case, can be given by chancery only." For it appears that D. Cameron, under whom the plaintiffs claimed, had given a valid quit-claim deed, to Williams, under whom the defendants claimed, conveying the lands sued for, the legal title to which had remained in him, in consequence of the mistake in his original conveyance of the premises to Helm. The decision was put on a ground entirely distinct from the power of the court to correct the mistake. In *Jackson* v. *Sill*, (11 *John.* 201,) the parol proof offered was sufficient to show that, by a clear mistake of fact, the will did not correspond with the testator's intention. The evidence was rejected, Thompson, Ch. J., saying it could not be admitted in a court of law; and that he had industriously searched for some principle that would warrant him in letting in the evidence offered; but that he had searched in vain.

But none of these cases, and no other case which has fallen under my observation, presents the precise point which arises in this one. In all the cases cited, the writings were themselves complete, conveying a distinct idea. The fact that a mistake had occurred was first to be established by parol proof; and then by the same proof it was sought to show its extent and character, and to obtain the benefit of the explanation. All such proof directly contradicts the written instrument. Here, the existence of the mistake is apparent on the very face of the writing. The evidence of it is irresistible. No extrinsic proof can add a jot to its force. And the proof offered did not tend to contradict the writing. That contradicted itself. As the written agreement now stands, no tribunal can determine the rights of the parties to it. Every court must see, upon reading it, that though it was intended to be, it is *not* the actual

and complete depository of the intention of the parties. With-out aid, that intention cannot be ascertained. One of two consequences must, therefore, follow. Either the proof to explain the admitted contradiction should have been received, and for its rejection, the judgment should be set aside ; or, if the proof could not be received, the complaint should have been dismissed, the agreement before the court being void for uncertainty.

In my judgment, the proof should have been received. I can discover no ground of principle for its rejection. And I think I have shown that none of the authorities referred to are in point against its admission ; while the authority of Starkie warrants its reception. And without it, there will be a failure of justice ; neither party being able to enforce the rights which the agreement was designed to confer on him. Indeed, I have yet to see a single authority which holds that in a case like the present, where the parol proof is offered by way of defense, not to show the existence of a mistake, but to explain one patent on the record, it is inadmissible. Certainly the case of *Bushman's Lessee* v. *Stewart*, (3 *Har. & J.* 329,) which was much relied on at the argument, sustains no such proposition. The deed in that case conveyed " all that lot or parcel of ground, situate in Baltimore town, and distinguished on the plot of said town, by the No. 25, and beginning at a point" &c., giving courses and distances so as to include only one half of lot No. 25. It was held that the entire lot passed, though not included in the special description by courses and distances. And parol evidence that it was not the intention to convey the whole lot, but only the part included in the special description, was rejected. The contradiction there, did not exist on the face of the deed, but was raised by extrinsic proof. It seems to have been a case of *falsa demonstratio*. Two forms of expression were used to describe a single thing, one being correct and one erroneous. Whether the case was rightly decided or not, it has no application here.

Nor do I see any difficulty about the admissibility of the evidence, in this case, arising from the form of the pleadings. The answer sufficiently alleges the existence of the mistake.

McNulty *v.* Prentice.

The plaintiff was fully informed of the true question presented for litigation, and had every opportunity to prepare for it.

This court is now vested with the powers of the former court of chancery. The city court of Brooklyn, in the cases committed to its jurisdiction, of which this action was one, has a civil jurisdiction, extending to matters of equitable cognizance, as well as to those at law. Each court is empowered to grant to the defendant any affirmative relief to which he may be entitled. (*Code,* § 274.) Each court, on a bill filed to reform the indenture, might have granted such relief, by virtue of its powers as a court of equity. But when reformed, the indenture would probably be of no practical value or use to the master, except as a defense against such an action as the present, by the apprentice.

It is little less than absurd that a court of such powers cannot permit the defendant to shield himself from attack behind such parol evidence as this, while it tells him at the same time that if he will himself become the attacking party and initiate a new litigation, the same court, with no change of power or function, will permit him, upon the same testimony, to show this mistake, and then that result being accomplished, to use it as a defense in the first suit.

The judgment should be reversed, and a new trial granted in the court below, costs to abide the event.

[Dutchess General Term, April 14, 1857. *S. B. Strong, Birdseye* and *Emott,* Justices.]