H. Johnson *v.* T. P. Tisdale.

## SUPREME COURT—IN BANCO.

JANUARY TERM—1883.

*Judd, C. J., McCully and Austin, J.J.*

H. JOHNSON *vs.* T. P. TISDALE.

A CONTRACT OF GUARANTY was executed by defendant that C. L. T. would faithfully carry out and perform a contract made by C. L. T. with plaintiff for teaming two crops of sugar cane, and that defendant would indemnify plaintiff from all loss or damage by reason of the non-performance of said contract by fault of C. L. T. There were signed on the same day (1) a bill of sale of certain teams, etc., from plaintiff to C. L. T. (2), a chattel mortgage on said teams by C. L. T. to plaintiff to secure the faithful performance of the teaming contract (3), a mortgage by plaintiff to C. L. T. on the sugar manufactured to secure the payment for the teaming, over and above the price of the chattels sold.

The teaming was complete and C. L. T. sent his bill for the same to plaintiff and informed him that unless paid within two weeks he would take possession and sell the sugar. Plaintiff replied that C. L. T. had not done the teaming honestly and fairly and refused to pay till bill made satisfactory.

C. L. T. took possession and sold the sugar.

The Court refused to charge that C. L. T. under the authority given him by the mortgage from Johnson had power to take possession of Johnson's sugar to pay the balance due on teaming;

HELD, no error; as the bill for teaming was disputed there was no default and the sugar was seized at C. L. T's. risk. The Court refused to charge that "Johnson having admitted balance of $1,200 due from him to C. L. T. for teaming, the latter had full authority to take possession of plaintiff's sugar, it not being pretended that a tender was made of this amount;"

HELD, no error, as no tender is necessary when it is reasonably certain that it will be refused;

H. Johnson *v.* T. P. Tisdale.

HELD, the above stated Exhibits, being of the same date and refer-
ring to the same subject matter, constitute one contract, and the
faithful performance of all of them was undertaken by defendant
in his guaranty and his agreement to indemnify plaintiff, and
this properly included the damages from sale of the sugar. The
damages suffered by plaintiff from sale of the sugar were direct
consequences arising from the breach of contract by C. L. T.

Opinion of the Court by AUSTIN, J.

This is an action on a guaranty. The defendant by contract
of guaranty dated December 31, 1880, agreed that C. L. Tis-
dale would "faithfully carry out and perform a contract made
by him with Smith and Johnson to carry for them to the
Halawa Mill when ready for grinding, two crops of cane
which will be the crops of 1881 and 1882, now standing on
the premises held by Smith and Johnson under agreement
with Tisdale and Thompson." And further undertook to guar-
antee and indemnify said Smith and Johnson from all loss or
damage by reason of the non-performance of said contract by
fault of said C. L. Tisdale.

By that carting contract, said C. L. Tisdale agreed that
each team employed in doing said carting should do a fair
and honest day's work, and each team should be reckoned at
$7.50 per day. The verdict of the jury at the October term
was against the defendant for $1,800 damages, and the de-
fendant appeals to this Court.

By the verdict of the jury, it was conclusively decided that
C. L. Tisdale failed to do a fair and honest day's work under
said carting contract, and that the direct damages thereby
arising to the plaintiff was $742.03. The rest of the damages
were given because of the injury claimed to arise to the
plaintiff from a wrongful sale by C. L. Tisdale through the
defendant, his agent, of the plaintiff's sugars manufactured
from his cane, carted to said mill by said C. L. Tisdale under
the said contract.

The plaintiff admitted at the trial, that at the time the
sugar was sold he owed C. L. Tisdale for balance of carting

H. Johnson *v.* T. P. Tisdale.

over and above all damages for unfaithful work the sum of $1,214.70. The plaintiff never made tender of this sum to the said C. L. Tisdale.

C. L. Tisdale claimed that the balance due him for carting was $1,956.73. On this point the verdict of the jury is in favor of the plaintiff. The sugars sold were worth when sold at their then market value the sum of $3,015.81. The sale made of sugars was at much less than their market value, and they were mainly bought by the defendant.

The sale was made to collect said balance of $1,956.73 claimed due under a chattel mortgage given by said plaintiff Johnson, on said sugars, to said C. L. Tisdale.

Prior to the sale the said bill for teaming as claimed by C. L. Tisdale had been presented to the plaintiff and payment demanded, and on August 11, 1882, C. L. Tisdale, through defendant as his attorney in fact notified plaintiff in writing, that as he had failed to settle said bill he should take possession of said sugars to pay the same, and expenses as empowered by said mortgage, and that unless the account was settled in two weeks he should sell the sugars at public auction.

To this notice the plaintiff, on the same day, replied in writing, as follows :

"KOHALA, August 11, 1882.

"T. P. Tisdale, Halawa Mill : I received a notification from you this morning that, in case I did not settle your bills presented in two weeks, you would sell enough of my sugar to satisfy the same.

"As your bills are not according to agreement, I refuse to pay the same until satisfactory.

"I hereby notify you that any sale you may make of any of my sugar will be illegal and void, and that I shall hold you and all parties concerned in such sale liable to me for damages.

"(Signed)          HENRY JOHNSON."

The said chattel mortgage provides that if default be made in payment of any balance due for teaming to said C. L.

Tisdale he may take possession of said sugar, and sell the same at public or private sale, and apply the proceeds to the payment of said amount due and expenses, and return the balance to the plaintiff. The mortgage recites that payment for the teaming is to be made when it is done.

This last clause is to be construed reasonably.

The plaintiff was not in default in this case till after the bill therefor was presented. When presented as appears above, the plaintiff disputed it.

The amount due was in controversy between the parties. It was an unliquidated sum.

The defendant claims it was liquidated as each load was to be reckoned at $7.50 a day. The contract says such loads were to be " fair and honest " loads. The verdict of the jury finds they were not so. The value of the loads actually drawn was unliquidated and required for the determination thereof the decision of a legal tribunal. It was uncertain because of the wrongful act of the defendant.

The defendant says the mortgage is to be distinguished from one securing unliquidated damages. Had there been no dispute as to the kind of loads this might have been true. But the dispute rendered the mortgage clearly security for an unliquidated sum.

In such a case no seizure and sale under a mortgage would be valid till after the amount due became fixed by legal investigation. See De Mott *vs.* Benson, 4 Ed., Ch. R. P., 307, 316-17; Ferguson *vs.* Kimball, 3 Barb. Ch. R., 616-16; Ferguson *vs.* Ferguson, 2 Com. 360-4.

Until default was made, the plaintiff had possession of the sugar.

The defendant's counsel asked the Court to instruct the jury.

1. " That Charles L. Tisdale, under the authority given to him by the mortgage from Johnson, had power to take possession of Johnson's sugar to pay the balance due on teaming.

2. " That Johnson, having admitted a balance of $1,200 to be due from him to Charles L. Tisdale for teaming, the latter

had full authority to take possession of plaintiff's sugar, it not being pretended that a tender was made of this amount."

The Court refused so to charge, and we think the Court was right.

The mortgage provides, as quoted above, that in case default be made in payment of any balance due, the said C. L. Tisdale may take possession of the sugar.

Had a legal tender been made of the amount due it would have been equivalent in effect to payment, and C. L. Tisdale could not have taken or retained possession, and his lien would have been lost. See Jackson *vs.* Crafts, 18 John., 110; Farmers' Fire Insurance Co. *vs.* Edwards, 26 Wend., 541, 556. If no tender was required to be made in the case, the effect would be the same as that of a tender leaving plaintiff liable for the balance he admitted to be due.

In the case of the United States *vs.* Lee, decided in the Supreme Court of the United States, December 4, 1882, Miller, J., who delivered the prevailing opinion says, quoting the language of the same Court in the case of Hills *vs.* Albany Exchange Bank: "It is a general rule that when the tender or performance of an act is necessary to the establishment of any right against another party, this tender or offer is waived or becomes unnecessary when it is reasonably certain that the offer will be refused." See Albany Law J., Vol. 27, n. 1, p. 12.

In this case as shown by his letter of August 11, the plaintiff was ready and willing and offered to pay the balance of the teaming due C. L. Tisdale which he refused to receive, and demanded much more than he was entitled to as found by the jury.

Thereafter the plaintiff had a right to demand his sugar, and the subsequent seizure and sale of it was a conversion for which C. L. Tisdale was liable.

Until Johnson made default in payment Tisdale had no right even to take possession, and Johnson made no default. See also Hoyt *vs.* Sprague, 61 Barb., 497, 505-6; Adams *vs.*

77

Clark and others, 9 Cush., p. 215; Jones *vs.* Tarletorn, 9 Meeson and Welsby, p. 674–7. As charged by the Chief Justice the seizure and sale were at the risk of C. L. Tisdale.

The defendant further objected to the charge of the Court, because it authorizes the jury to give damages for loss resulting from the sale under the power contained in the mortgage, which sale occurred after the suit was begun. At that time C. L. Tisdale had wrongfully taken possession of the sugars.

The plaintiff had a right to recover the whole value of it less the balance due for teaming.

The sale was merely a new wrongful act occurring after process served, and being the incident and direct object of taking possession. By numerous authorities the plaintiff had a right to recover damages arising from that sale. See Sedgwick on Damages, p. 110 to 114, Wilcox *et al. vs.* the executors of Plummer, 4 Peters R., 172. If this suit then were against C. L. Tisdale, what we have said shows that he would be liable for the damages which have been recovered against the defendant.

This brings us to the remaining question in the case.

The defendant's counsel urges with great confidence, that the defendant is not liable on his guaranty for the damages recovered against him nor for any damages, because there was due C. L. Tisdale $1,200 over and above all damages for breach of the teaming contract for which only defendant was liable.

He says defendant's liability became fixed upon the delivery of the last load of cane. That the damages arising from seizure and sale of the sugar did not arise from the contract which he guaranteed, but from subsequent proceedings upon a different contract, viz., the mortgage from Johnson to C. L. Tisdale.

To sustain this view he quotes many authorities, the law of most of which we do not dispute.

He specially relies upon the case of United States *vs.* Tillotson, 1 Paine, C. C., p. 320.

H. Johnson v. T. P. Tisdale.

He wishes the Court carefully to examine this case, and claims that it is much beyond the facts of his client's case in favor of his discharge. We have followed the wish of the counsel about this case and fully agree with him that the guarantor sought to be held therein should be discharged. The facts show an agreement to build a fort for the United States of brick, for which the contractor was to receive $11 for every cubic yard of brick masonry, which contract the defendant guaranteed. And thereafter the contract without the consent of the guarantor, was changed so that the material should be in large part of a certain composition called tapia, being a species of artificial stone for which the contractor was to receive $10 a cubic yard.

This constituted an entire change of the contract guaranteed, and no authority can be found which would hold the guarantor for damages under such a changed contract. The other cases cited by the defendant's counsel are to the same effect and need not be specially considered.

It is not pretended in the case at bar that the teaming contract in itself was changed, but it is said that the defendant is sought to be made responsible for damages under the chattel mortgage to C. L. Tisdale, a different contract and the payment of which damages he did not agree to guaranty.

On referring to the contract of guaranty we find it bears date December 31, 1880, and agrees to guaranty the performance of a contract for carting cane made by C. L. Tisdale with the plaintiff.

The conditions of that contract were contained in three papers—the bill of sale and teaming contract so named, the chattel mortgage from Johnson to C. L. Tisdale, and the chattel mortgage Exhibit "E" from C. L. Tisdale to Johnson on which the guaranty was written. On examining these papers we find that they are between the same parties, and are dated respectively December 31, 1880—the same date as the said guaranty. That they and the guaranty were ac-

knowledged before the same officer on the same day, January 7, 1881, and doubtless they were mutually delivered, or intended to be, on the day they were acknowledged. Each of the chattel mortgages refers to the teaming contract and the mortgage from C. L. Tisdale to Johnson was given upon teams sold by Johnson to C. L. Tisdale, further to secure the faithful performance of the teaming contract.

In Makepiece *vs.* Harvard College, 10 Pick., 298, 301, Shaw, C.J., says: "Several instruments made at one and the same time, and having relation to the same subject matter, must be taken to be parts of one transaction, and be construed together for the purpose of showing what was the true contract between the parties."

And in Cornell *vs.* Todd, 2 Denio, 130-33, Judge Bronson says: "It is undoubtedly true that several deeds or other writings executed between the same parties at the same time, and relating to the same subject matter, and so constituting part of one transaction, should be read and construed together as forming parts of one assurance or agreement." See also Hanford *vs.* Rogers, 11 Barb., 18, 20 ; Pepper *vs* Haight, 20 Barb., 429-35 ; McNulty *vs.* Prentice, 25 Barb., 204-8 ; Hathaway *vs.* Payne, 34 N. Y. R., 92, 100 ; Cow. & Hill's Notes to Phillips' Ev., pp. 1,451-2 ; Parsons on Con., Vol. 2, p. 15.

Under these well settled rules, the three contracts between C. L. Tisdale and Johnson were parts of the same transaction, and are to be construed together, and the binding conditions of the teaming contract are to be determined by examining them all. If there are any duties pointed out by either of those instruments which refer to the carting and delivery of the cane, or the payment therefor, which C. L. Tisdale was to perform, or any acts thereby prescribed which he was to do or refrain from doing, the defendant agreed that he would pay all damages arising from C. L. Tisdale's failure to perform those duties, or to do or refrain from doing those acts.

It was just as important to the plaintiff that C. L. Tisdale should be fair and honest in his method of collecting his pay

for the balance of teaming due as in doing the teaming, and the former covenant was just as much a part of the teaming contract as the latter. And the defendant agreed that C. L. Tisdale would "faithfully carry out and perform that contract," and that he would indemnify the plaintiff from all loss by reason of the non-performance thereof.

Every phrase and sentence in either of those documents which relates to the teaming contract is a part thereof. Even if they were not dated and delivered at the same time, they so refer to each other that the clauses in the mortgage to C. L. Tisdale become and are necessarily a part of the teaming contract. See Sawyer *vs.* Hammatt, 15 Maine, 40 ; Van Hagen *vs.* Van Rensselaer, 18 John, 420 ; Parsons on Contract, Vol. 2, p. 15, n. u.

The defendant's counsel says that the sale of the sugar was either authorized by the mortgage or it was a tort, and claims that if it was a tort he cannot be held for an illegal act or trespass on the part of C. L. Tisdale. We hold that this is not so. The wrongful breach of this part of C. L. Tisdale's teaming contract became a tort, and for it the defendant is liable.

The counsel cites, to sustain this point, Dudley *vs.* Folliott, 3 Durn & East, 584. It does not sustain it.

In that case a sale was made of a tract of land in America during the first American rebellion, and the grantor covenanted for the peaceful possession of the grantee as against himself, his heirs and assigns, and of and from all and every other person or persons whomsoever. The Americans passed an Act forfeiting the lands, and after the peace in 1783 took possession of the lands under that Act. The Court held that the grantor did not covenant against, and was not liable for their trespasses. Had the trespasses complained of been those of the grantor, or his heirs or assigns, or of those whose acts he agreed to insure against, it would have been like this case, and the grantor would have been holden, as the defendant is here.

The damages arising from the seizure and sale are in no sense remote. They are the direct consequences of the wrongful breach of his contract by C. L. Tisdale. See Field on Damages, p. 9, Section 11 ; p. 10, Section 12 ; p. 29, Section 33.

It is true that the maxim *strictissimi juris* is properly applied to the construction of contracts of guaranty ; but that maxim does not require, as is asked in this case, that plain provisions of the contract guaranteed shall be eliminated from it.

The judgment must be affirmed, with costs.

A. S. Hartwell for plaintiff.

F. M. Hatch for defendant.

Honolulu, February 26, 1883.